# JUNE 1922

### J. S. MIDDLEKAUFF V. STATE BANKING BOARD ET AL.

#### No. 3577.   Decided June 7, 1922.

#### (242 S. W., 442.)

**1.—Payment—Acceptance of Negotiable Paper.**

The law indulges no presumption from the creditor's acceptance of negotiable paper of the debtor (here a cashier's check in exchange for his check against his deposit in a state bank) that it is to operate as payment of the original indebtedness (that of the bank to him as depositor.) The presumption is, on the contrary, that the parties intended it only as a conditional payment. The creditor, if the instrument is not paid, may sue on the original indebtedness. (Pp. 566, 567.)

**2.—Same—Banking—State Guaranty Fund—Case Stated.**

A depositor in a state bank, his deposit secured by the state guaranty fund, took a cashier's check of the bank in exchange for his own check against his deposit for a part thereof. The bank was closed a month later by reason of its insolvency, the cashier's check remaining unpaid in his hands. Held, that, as to its amount, he remained an open, unsecured, and non-interest bearing depositor, as though he had had his personal check certified by the bank, or taken a certificate of deposit; and that he was entitled to payment out of the guaranty fund under the state banking law, and could enforce that right by mandamus from the Supreme Court against the officers charged with administration of that fund. (Pp. 565, 568.)

Original application to the Supreme Court by Middlekauff for writ of mandamus against the officers controlling, under the state banking law, the administration of the guaranty fund for state banks.

*R. B. Cousins, Jr.,* for relator.—The State Treasurer, the Attorney General and the Commissioner of Insurance and Banking, being heads of state departments and as such constituting the State Banking Board, are subject to Writs of Mandamus issued by the Supreme Court under the Constitution and laws of the State. Constitution of Texas, Sec. 3, Article 5; Article 1526, Revised Statutes of Texas, 1911; Title 14, Chapter 5, Rev. St. Texas, 1911—Art. 446; Fireman's Fund Insurance Co. v. Von Rosenburg, 103 Txeas, 571; Aetna Insurance Co. v. Hawkins, 103 Texas, 195; Gillespie v. Lightfoot, 103 Texas, 359; Bodenheim v. Lightfoot, 103 Texas, 639; Terrell v. Sparks, 104 Texas, 191.

The guaranty fund is created for the purpose of paying the depositors in state banks subscribing to the said fund when such a bank becomes unable to pay such depositors, with the provision that the fund shall protect only non-interest bearing and unsecured deposits. Title 14, Chapter 5, Revised Statutes of Texas; Article 486, Revised Statutes of Texas.

A depositor is one who intrusts or places money or other property with another for safe keeping and the relation created by a deposit continues until that which is deposited is returned to the depositor. Duncan v. Magette, 25 Texas, 248; Warren v. Nix, 135 S. W., 899.

As between the parties the cashier's check issued was merely a certificate of deposit, evidencing that J. S. Middlekauff was a depositor in the Leeray Guaranty State Bank in the amount named. 7 Corpus Juris, p. 646, Sec. 334; 5 R. C. L., p. 483; First Nat'l Bank v. Greenville Nat'l. Bank, 84 Texas, 40; First Nat'l. Bank v. First Nat'l. Bank, 264 Fed., 83; Walker v. Sellers, 201 Ala., 189; Lummus Cotton Gin v. Walker, 195 Ala., 553; Clark v. Chicago Trust Co., 186 Ill., 440.

It is universally recognized that the relation created by deposit of money in a bank is different from that created by the deposit of property which is to be returned itself, the general deposit of money in the bank creating the relation of debtor and creditor. Duncan v.

Magette, 25 Texas, 248; First Nat'l. Bank v. Greenville Nat'l. Bank, 84 Texas, 40; Van Winkle v. Citizens Bank, 89 Texas, 153; Templeman v. Hutchings, 57 S. W., 868; Hoskins v. Velasco Nat'l. Bank, 107 S. W., 603; First State Bank v. Shannon, 159 S. W., 401; 2 Daniel, Negotiable Instruments, 6 Ed., Sec. 1601-a; 2 Michie on Banks and Banking, Art. 119, p. 883; 3 Ruling Case Law, Art. 149 and 169; 7 Corpus Juris pp. 628 (Sec. 305), 641 (Sec. 326) 650, (Sec. 342).

The obligation of debtor and creditor existing between the Leeray Guaranty State Bank and J. S. Middlekauff could only be discharged by an actual payment of the money due to the said Middlekauff by the said bank and such relation having its inception in the deposit of certain money in the bank by the relator, could not be discharged otherwise than by the actual payment of money to the said Middlekauff or to his order. Thompson. v. Riggs, 6 D. C., 99; Leather Mfg. Nat'l. Bank v. Merchant's Nat'l. Bank, 128 U. S., 26; 2 Michie on Banks and Banking, Art. 133 (3) page 995, and page 1001; 7 Corpus Juris, p. 640 (Sec. 324).

The relation of debtor and creditor existing between the said bank and the relator, being identical in all essential elements with the ordinary relation of debtor and creditor could not be discharged by the giving of a worthless check. A worthless check taken by a creditor in payment of an obligation does not discharge nor vary the obligation nor relegate the creditor to his action on the check. 2 Michie on Banks and Banking, p. 1179; 3 Ruling Case Law, Banks and Banking, Art. 169; 7 Corpus Juris, p. 640, 628, 650 (Par. 342); McNeil v. McCamley, 6 Texas, 165; Armstrong v. First Nat'l. Bank, 195 S. W., 562; Born v. Bank, 7 L. R. A. 442 (and notes); 20 L. R. A. (N. S.) 290.

In the absence of specific agreement to that effect, acceptance of a check does not discharge the original debt, which remains in full force in all of its essential elements, nor does it vary the relation theretofore existing between the parties. McGuire, Helm & Co. v. Bidwell, 64 Texas, 45; Waggoner Bank v. Gamer Co., 213 S. W., 927; Kennedy v. Groves, 110 S. W., 136; Johnson v. Hulett, 120 S. W., 257, 259; T. & P. Ry. Co. v. Hoffecker, 123 S. W., 617; Pope v. Graham, 44 Texas, 198; Johnson v. Amarillo, 88 Texas, 509; Western Mfg. Co. v. Maverick, 23 S. W., 728; Hogan v. Kaiser, 88 S. W., 1128; Empire Copper Co. v. Shaw, 181 Pac., 464; 30 Cyc. 1207; 2 Daniel on Negotiable Instruments (6 Ed.) p. 1827, Sec. 1623; 2 Daniel on Negotiable Instruments (6 Ed.) p. 1900, Sec. 1701.

From the standpoint of the Leeray Guaranty State Bank the obligation of the bank on the cashier's check involved herein was the same as its obligation would have been upon a certificate of deposit and the respondents concede that the holder of a non-interest bearing certificate of deposit is a depositor in the bank and entitled to protection. Rulings Attorney General's Dept. covering 1916, p. 187; 7 Corpus Juris p. 647 (Sec. 336) p. 650 (Sec. 342).

The legal effect of the execution of the cashier's check, from the standpoint of the relator, was to give him concrete evidence of the fact that he had upon deposit in that bank subject to his order the amount of money specified on the face of the check. His possession of the cashier's check did not change the relation existing between the bank and the relator, but simply changed the evidence of that relation.    2 Daniel Negotiable Instruments (6 Ed.) p. 1799. Sec. 1603; 2 Daniel Negotiable Instruments (6 Ed.) p. 1899, Sec. 1698.

*C. M. Cureton,* Attorney-General, and *C. W. Taylor,* Assistant, for respondents.—The authorities as to the status of the cashier's check were set forth in an opinion by the Attorney General with reference to the liquidation of the old West Texas Bank and Trust Company. The opinion was dated April 24, 1916, and is to be found in the Report and Opinions of the Attorney General of Texas for the years 1914 to 1916, pages 175 to 193. We will quote from that opinion, giving the list of authorities which will constitute a part of our brief in this case:

A cashier's check is the bank's own check which is issued by the cashier at the request of a depositor against whose account it is charged. Such a check is strictly commercial paper, and is merely a bill of exchange drawn by a bank on itself and accepted in advance by the act of its issuance. It is not subject to countermand by the payee after endorsement, as is an ordinary check by the endorser, and the relations of the parties to such an instrument are analogous to those of the parties to a negotiable note payable on demand. 2nd Michie on Banks and Banking 1168-1105; Penn Bank v. Frankish, 91 Penn., 339; Drinkall v. Movius State Bank, 57 L. R. A., 341; Henry v. Allen, 36 L. R. A., 658. Throughout the whole Guaranty Act, the claims or obligations to be protected are constantly referred to as deposit obligations, and the fund raised under the guaranty fund plan is designated in the law as the Depositor's Guaranty Fund. The word "depositor" in the Act is evidently used in its general and ordinary significance. A depositor is one who delivers to or leaves with the bank money subject to his order, either general time deposit or subject to check. Michie on Banks and Banking, Vol. 2, Sec. 119; Lawson v. Baker, 220 S. W., 260, 269; State v. Corning State Saving Bank, 113 N. W., 500.

In determining the amount which shall constitute the Guaranty Fund, each bank is required to pay a per centage on its daily average "deposits." R. S., Article 448. Reserves are required to be maintained against "deposits." Acts 1914, 3rd S. S. p. 47, Section 3. In determining the amount of the Guaranty Fund or of reserves, cashier's checks are not regarded or considered any where under the law. The Banking Department has continuously held, as has the Attorney-General, that cashier's checks were not protected by the Guaranty

Fund, and this, as we understand the rule, is to be considered by the court in construing the law.

*Hawkins, Hawkins & David,* as amici curiæ and on behalf of clients similarly interested, filed an argument and citation of authorities in support of relator's position.

*W. A. Keeling,* Attorney-General, and *Eugene A. Wilson,* Assistant, replied thereto for respondents.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Relator brought this suit in the Supreme Court, against the State Banking Board, the Commissioner of Insurance and Banking, the State Treasurer, and the Attorney General, to compel the payment to Relator of three thousand dollars out of the guaranty fund created under the banking laws of the State.

Prior to December 21, 1920, Relator deposited certain sums of money in the Leeray Guaranty State Bank, of Leeray, Texas, which was chartered under the banking laws of Texas. The Bank operated under the "guaranty fund plan." The Bank was closed on account of its insolvency on December 31, 1920.

On December 21, 1920, the Relator had an open, unsecured, and non-interest-bearing deposit with the Bank of $3712.35. On that day he cashed a check for $200, leaving a balance to his credit as a general depositor in said Bank of $3512.35. At the same time, Relator obtained from the Bank its cashier's check, which was signed by its cashier, and which, omitting the cashier's signature, read as follows:

                                                    ﹨        "No. 1184

"Leeray Guaranty State Bank,
    "Leeray, Texas, Dec. 21, 1920.
    "Pay to the order of J. S. Middlekauff
"$3000, Three Thousand Dollars.
"Cashier's Check."

In exchange for the cashier's check, Relator gave his own check on the Bank for $3000. The cashier's check was never paid, on account of the insolvency of the Bank.

Relator presented a claim for the payment to him of $3512.35 out of the guaranty fund, by reason of the aforesaid indebtedness of the Bank to him. His right to payment of $512.35 out of the guaranty fund was not questioned, and that sum has been paid to him.

The single question for our determination is whether, on the facts stated, the Relator is entitled to have the balance of his claim against the Bank, amounting to $3000, paid out of the guaranty fund, it being contended by Respondents that after the acceptance of the cashier's check, Relator no longer had an unsecured and non-interest bearing deposit in the Bank.

Before the cashier's check was applied for, on December 21, 1920, Relator was a general depositor in the Bank. He was the Bank's creditor for $3512.35. The Bank was his debtor in that amount. The money which Relator placed in the Bank had become the property of the Bank. The obligation of the Bank was to pay to him $3512.35, on demand, which obligation was manifestly secured by the guaranty fund and in no other way. Unless otherwise agreed, this obligation of the Bank to Relator as a depositor could be discharged only by payment in money to him, or to his order, of the full amount of his deposit.

No facts are relied on, to show an agreement by Relator releasing the Bank from its obligation, or to show a payment in discharge of same, to the extent of $3000, save that Relator gave the Bank his check against his deposit for $3000, and received the Bank's check on itself for that sum.

It is essential to the extinguishment of an obligation, by the debtor's issuance of his own negotiable paper therefor to his creditor, that both debtor and creditor intend the paper to discharge the obligation. The law indulges in no presumption from the creditor's acceptance of the paper that it is to operate as an absolute payment. The presumption is, on the contrary, that the parties intend that the paper shall operate only as a conditional payment. The condition implied is performance of the promise evidenced by the paper. Upon the paper's dishonor, the creditor may enforce the debtor's original obligation.

In McGuire v. Bidwell, 64 Texas, 45, the court, through Judge Stayton, said: "The rule is that the negotiable promissory note of the debtor does not amount to payment of the indebtedness for which it is given unless the circumstances show that such was the intention of the parties."

Again, in Johnson v. Amarillo Improvement Co., 88 Texas, 510, 31 S. W., 505, the declaration in Crane v. Clay, 25 English Law and Equity Reports, 451, was quoted with approval, as follows: "A bill given for and on account of money due on a simple contract operates as a conditional payment, which may be repudiated at the option of the creditor, if the bill be unpaid at maturity in his hands, in which case he may rescind the transaction of payment and sue on the original contract."

The transaction between Relator and the Bank negatives an intent by either party for the cashier's check to wipe out the Bank's debt. Relator had put his money in the Bank for safekeeping, being entitled to rely on the security afforded by the guaranty fund. He chose not to have the Bank pay him $3000, on his check, in discharge of its obligation in that amount. He sought to avoid the risk of carrying that much money on his person. He did not care to substitute another debtor for the Bank. We cannot reasonably attribute to him the purpose to merely weaken his security. The certificates for

Relator's deposits, whether on slips or in a pass-book, evidenced that he had an unsecured, non-interest-bearing, debt against the Bank, payable to him or his order on demand, for his unchecked and unpaid balance. The cashier's check evidenced the same obligation, save it specified the balance, and, in ordinary course, it would have enabled Relator to utilize his balance with more facility. Had Relator had his own $3000 check certified, or had he taken the Bank's formal certificate of deposit for that amount, no one could maintain that he meant such negotiable paper to extinguish the Bank's liability to him as a depositor. Yet it seems plain enough that we can ascribe no different intention to the parties, with respect to discharge of the Bank's obligation, supported by the guaranty fund, than if their transaction had been consummated by means of formal certificate of deposit or by certified check. 5 R. C. L., 483, 484; Walker v. Sellers, 201 Ala., 189, 77 So., 715.

Referring to a cashier's check, which a depositor of a bank obtained by having the amount of the check entered on his pass-book as a payment to him, the Supreme Court of Illinois said: "The check was not drawn by a depositor, but was simply an acknowledgment of an indebtedness on the part of the bank to the payee of the order. As between the bank and appellant (the payee) it was, in legal effect, the same as a certificate of deposit or a certified check." Clark v. Chicago Title & Trust Co., 186 Ill., 444, 53 L. R. A., 232, 78 Am. St., 294; Same case, 85 Ill. App., 295. To the same effect, see Lummus Cotton Gin Co. v. Walker, Supt., 195 Ala., 555, 70 So., 754.

Relator's check for $3000 against his deposit has not been paid. He drew the check to get $3000 not at that moment but when he or his transferee might choose to present the cashier's check. The cashier's check was but the vehicle by which the payment of Relator's check was to be accomplished. Upon the dishonor of the Bank's check, Relator's deposit stands as though he had never drawn his own $3000 check, nor received the Bank's worthless check. Western Brass Mfg. Co. v. Maverick, 4 Texas Civ. App. 535, 23 S. W., 728; Anderson v. Owen, 112 Miss., 476, 73 South., 286; Bank of Greenville v. Kretschmar, 91 Miss., 615, 44 So., 930.

We are not inclined to hold that a cashier's check will ordinarily draw interest in advance of its presentment for payment. The essential understanding of the parties is that the principal only is to be paid whenever the holder may elect to present the check for payment. Duncan v. Magette, 25 Texas, 248. However, having held that Relator could repudiate the check, on the Bank's insolvency, as he did, it is not necessary for us to determine the question.

Since it plainly appears that the transaction between Relator and the Bank did not discharge the Bank's obligation to Relator as a general depositor, entitled to the benefits of the guaranty fund, such transaction presents no obstacle to his maintenance of this suit.

We express no opinion as to the right, with respect to the guaranty fund, of a payee of a cashier's check, to whom no obligation has been previously incurred under a general deposit. It is enough to say that Relator's unextinguished rights under his open, unsecured and non-interest-bearing deposit furnish the basis on which we predicate the decree in his favor.

It is ordered that this suit be dismissed as to the respondents no longer in office, and that a writ of mandamus be issued against the remaining respondents, requiring the allowance of the claim of Relator for payment out of the bank guaranty fund.

Chief Justice Cureton took no part in the decision of this case.