**TURNER et al. v. PUGH.**

No. 5710.

Court of Civil Appeals of Texas. Amarillo.

May 20, 1946.

Rehearing Denied June 24, 1946.

Boyer & McConnell, of Perryton, for appellants.

Hoover, Hoover & Cussen, of Canadian, and R. T. Correll, of Perryton, for appellee.

STOKES, Justice.

This suit was instituted by the appellant in her own behalf and as independent executrix of the last will and testament of her deceased husband, J. H. Scott, against the appellee, T. O. Pugh, upon two promissory notes executed by him to J. H. Scott on July 27, 1938, one being in the sum of $4,800 and the other in the sum of $4,032, due and payable on or before July 27, 1939 and July 27, 1940, respectively. After instituting the suit, appellant intermarried with M. J. Turner who joined her pro forma as plaintiff. Appellee filed his answer in which he alleged that as security for the notes he executed to J. H. Scott on October 1, 1938 chattel mortgages on his two-thirds interest in 400 acres of wheat to be grown in the years 1939, 1940, and 1941, together with all of his farm machinery, all located on the farm being cultivated by him in Ochiltree County. He further alleged that in the month of April 1941 an agreement was made between him and J. H. Scott whereby the latter agreed to accept the proceeds of the sale of the farm machinery and the wheat in full satisfaction of the indebtedness represented by the notes sued upon and that on June 25, 1941, the wheat crop being a complete failure, he delivered to Scott $700, being the proceeds from the sale of the farm machinery, which Scott accepted in full satisfaction of the entire indebtedness.

The case was submitted to a jury upon seven special issues, in answer to which the jury found that in the month of April 1941 J. H. Scott agreed to accept the proceeds of the sale of the mortgaged property in full satisfaction of the entire indebtedness; that on June 25, 1941 appellee paid to Scott $700, the proceeds from the sale of the farm machinery, in full payment of the two notes sued upon; that appellee was insolvent in the month of April 1941 and that Scott then knew of his insolvency; that Scott accepted the $700 in full satisfaction of the indebtedness and on June 25, 1941 he intentionally canceled the bal-

ance due on the notes. At the close of the testimony appellant filed and urged a motion for a peremptory instruction, which was overruled by the court and judgment was entered upon the verdict of the jury, denying appellant any relief. In due season appellant filed a motion for new trial, which was overruled and she gave notice of appeal and presents the case here for review upon a number of assignments of error. In the view we take of the case, it will not be necessary to discuss the assignments in detail. The controlling issue is presented by the eighth assignment of error brought forward under the fifth point, which assigns error of the court in overruling appellant's motion for a peremptory instruction. The motion was based upon the contention of appellant that according to the undisputed testimony no accord and satisfaction resulted from the negotiations and dealings between appellee and J. H. Scott.

This is the second appeal in this case, the opinion on the former appeal being published in 187 S.W.2d 598, where we discussed fully the issues made by the testimony upon the first trial, one of which was whether an accord and satisfaction was consummated by the negotiations between the parties mentioned. The record now before us presents a case which differs in no material respect from the case presented by the record upon the first appeal.

■ The rule has long been established and consistently adhered to by the courts of this State and practically every other State in the Union, as well as in England, that an accord and satisfaction involves a new contract between the parties and, like all other legal and binding contracts, to be effective it must be based upon a consideration; otherwise, the debtor has done nothing more than he was already obligated to do. Baker v. Coleman Abstract Co., Tex.Civ.App., 248 S.W. 412. It is true the courts are not concerned with the adequacy of the consideration so long as it is paid and accepted as such, but where the full amount of the indebtedness is not paid and there is no legal consideration shown for the new contract, no accord and satisfaction is accomplished. Wardy v. Casner,

Tex.Civ.App., 108 S.W.2d 772; Ashbrook v. Neal, Tex.Civ.App., 103 S.W.2d 1101, and authorities there cited.

■ It has been held that payment of the amount agreed upon as an accord before the date upon which the original indebtedness becomes due may constitute a valid consideration for an accord and satisfaction and, likewise, that where the debtor is insolvent, the acceptance of a smaller sum by the creditor may constitute a valid consideration for the new contract. Mayfield Woolen Mills Co. v. Long, Tex. Civ.App., 119 S.W. 908; Shelton v. Jackson, 20 Tex.Civ.App. 443, 49 S.W. 415. In some cases it has been stated that an accord and satisfaction based upon prepayment was binding upon the parties although the length of time intervening between the date of payment and the date upon which the original indebtedness was due was apparently insignificant; but it has been consistently held that in order for either prepayment or a condition of insolvency to constitute a valid consideration it must have been agreed upon and regarded as such by the parties. The mere fortuitous circumstance of insolvency at the time the payment is made or that incidentally the payment is made before the debt falls due is not considered a legal consideration where it in no degree prompted the parties in consummating their arrangement. Fire Insurance Ass'n v. Wickham, 141 U.S. 564, 12 S.Ct. 84, 35 L.Ed. 860; Simms Oil Co. v. American Refining Co., Tex.Civ.App., 288 S.W. 163.

■ Another pertinent and well-established rule is that an accord is merely executory until the satisfaction takes place, and until then it is not enforcible. Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Tex. 80, 7 S.W. 695; Columbian Nat. Fire Ins. Co. v. Dixie Co-op. Mail Order House, Tex. Com.App., 276 S.W. 219.

■ The record shows that during the month of April 1941 appellee and his wife went to Dallas for the purpose of borrowing some money from J. H. Scott. Scott informed them that he was not active any more and was not interested in loaning them any more money. He told them, however, that he would like to "get the old

debt cleared up," referring to the two notes sued upon in this case. Appellee informed Scott at that time that the wheat crop was very promising and Scott told him that if he would return to the farm in Ochiltree County, sell the farm machinery and bring to Scott the proceeds of its sale and also the sale of the wheat, he would cancel the entire debt represented by the two notes. Appellee returned to Ochiltree County, advertised his farm machinery for sale, and sold it for $700. On June 25, 1941 he and his wife returned to Dallas and delivered to Scott the proceeds of the sale, telling him that the wheat crop appeared to be a complete failure and would not bring enough money to pay for harvesting it. According to the testimony of appellee and his wife, Scott then told appellant to get a release and she asked him if he was going to return the papers for so small an amount as the $700 and he told her that was his purpose. A release of the lien was then executed and delivered to the appellee. An effort was made to find the notes but they were not found and Scott told appellee he would send them to him by mail but the notes were never returned. Appellee contends that inasmuch as he was insolvent at the time all these negotiations took place and his financial embarrassment was known to Scott, the acceptance by Scott of the $700 and the consummation of an accord and satisfaction was therefore based upon a valid consideration, namely, his payment of the $700 and Scott's accepting it at a time when the appellee was insolvent. There is nothing in the record to indicate that the settlement was based upon the fact that appellee was insolvent. As far as the testimony shows, the alleged settlement was based solely upon the payment by appellee of the $700 and Scott's acceptance of it in full satisfaction of the indebtedness which amounted to more than $9,000. As far as the record shows, appellee's insolvency was a mere circumstance that happened to exist at the time and it did not enter into the negotiations in any manner whatever. The reason given by the courts for considering insolvency as a valid consideration for an accord and satisfaction is that it is apparent to the creditor that if he does not accept the smaller amount, he may not be able to collect anything whatever or if he should, it probably would be fraught with vexatious and expensive litigation. Shelton v. Jackson, 20 Tex.Civ.App. 443, 49 S.W. 415. From this it follows that in order to constitute a consideration the insolvency must enter into the transaction and be consciously considered by the parties as the consideration for the new contract.

Appellee further contends that he paid the $700 at Dallas where Scott resided instead of paying it at Perryton where the notes were payable, and he cites some cases which hold that payment of a smaller amount at a different place may constitute a valid consideration for an accord and satisfaction. In the first place, this contention can not prevail for the same reason that the question of appellee's insolvency fails as a consideration, namely, that payment at a place different from that where the debt is payable did not enter into the new contract. There is no evidence that such matter was even discussed between the parties. In the second place, the contention is not sound for the reason that the $700 was paid by appellee's cheque on a bank at Perryton in Ochiltree County and the money was actually not paid until the cheque was cleared at the Perryton bank. There was no agreement that the cheque itself would constitute payment and it was therefore accepted upon the implied condition that it would be paid by the bank upon which it was drawn. McNeil v. McCamley, 6 Tex. 163; Friends In Need Society v. Peterson, Tex.Civ.App., 9 S.W. 2d 1110; Western Brass Manufacturing Co. v. Maverick, 4 Tex.Civ.App. 535, 23 S.W. 728; Middlekauff v. State Banking, Board, 111 Tex. 561, 242 S.W. 442.

Appellee makes the further contention that the $700 was paid before the real maturity of the indebtedness and he asserts that prepayment may constitute a valid consideration for an accord and satisfaction. As an abstract proposition of law, this contention is correct; but, like other elements of a contract, the fact of prepayment must be considered by the parties as a consideration and, admitting for the sake of discussion that the amount was paid before the real maturity of the notes, there is

nothing in the record to indicate that prepayment was considered by the parties or that it was agreed by them that the debt would be settled in consideration of such prepayment. Moreover, we are not in accord with appellee in his contention that the amount was paid before the maturity of the notes. According to their provisions, the notes matured in July of the years 1939 and 1940. Appellee contends, however, that inasmuch as Scott took mortgages on the wheat crop of 1941 and the crop could not be harvested until the summer of that year, the maturity dates of the notes were automatically, or by implication, extended until the time when the crop could be harvested and the proceeds from its sale obtained. In other words, his contention is that the maturity dates of the notes merged with the provisions of the mortgage in that respect. There have been numerous decisions of our courts holding adversely to this contention. It was settled by our Supreme Court as early as 1852 in the case of Burke v. Cruger, 8 Tex. 66, 58 Am.Dec. 102. In the case of Graves v. Allen, 66 Tex. 589, 2 S.W. 192, 194, Chief Justice Willie, speaking for the Supreme Court, said: "A simple contract is merged in a higher security only when the latter is taken in payment and satisfaction of the former. If accepted as collateral security, there is no extinction of the simple contract. This is distinctly decided in our state as to mortgages and other collateral securities. * * * They do not even suspend the remedy, unless such is the agreement of the parties expressed in the collateral instrument, or clearly to be deduced from its very terms, as in the case of Burke v. Cruger, 8 Tex. 66 [58 Am.Dec. 102], and [Cruger v. Burke] 11 Tex. 694." See, also, Pendergrass v. Hellman, 50 Ark. 261, 7 S.W. 132; York v. Robbins, Tex.Com.App., 255 S.W. 720; Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780.

Appellee urges that the condition of his wheat crop in April 1941 was promising and when Scott agreed at that time to accept the proceeds of the sale of the farm machinery and the wheat he was bound by his contract and even though the wheat crop failed and produced nothing, he was bound on June 25, 1941 to accept the proceeds of the sale of the farm machinery in full satisfaction of the indebtedness. The failure of the wheat crop made it impossible for appellee to perform the agreement of April 1941. According to the testimony, Scott did not know the crop had failed until June 25, 1941 when he was so informed by appellee. Scott's actions which immediately followed indicated he was willing to accept the proceeds of the sale of the farm machinery in settlement of the full amount remaining due upon the notes. As we have said, an accord is only executory until the satisfaction is consummated by payment of the amount agreed upon. The agreement made in April 1941 was therefore pending and executory until June 25, 1941 and, it being impossible of performance at that time, according to appellee's testimony, a new contract of settlement was entered into, which involved the payment only of the proceeds of the farm machinery. The agreement and conversation had between the parties in April, therefore, became immaterial.

A careful investigation of the entire record and all of the contentions presented by appellee brings us inevitably to the conclusion that the alleged accord and satisfaction contended for by him was wholly without a valid consideration to support it. The court below therefore erred in overruling appellant's motion for an instructed verdict. The record contains ample data by which the debt can be accurately calculated, and the judgment below will therefore be reversed and judgment here rendered in favor of the appellant and against the appellee for the amount of principal, interest, and attorney's fees remaining due on the notes sued upon.