**CARLISLE et al. v. MacDONALD et al.**
**No. 6254.**

Court of Civil Appeals of Texas. Texarkana.
Jan. 24, 1947.

Rehearing Denied Feb. 20, 1947.

Jones & Jones, of Mineola, for appellants.

Leslie Neill, of Tyler, Florence & Florence, of Gilmer, and Clower, Gist & Wilson and Pollard, Lawrence, Blackburn, Reeves, Crawford & Jarrel, all of Tyler, for appellees.

WILLIAMS, Justice.

Appellants J. R. Carlisle and Roxie Carlisle, his wife, plaintiffs below, on September 14, 1940, in consideration of $50 then paid by H. D. MacDonald, entered into a written contract under the terms of which plaintiffs granted to MacDonald an option "for a period of thirty days ending on the 14th day of October, 1940," to purchase for $1000 an undivided 10/144 royalty interest in a therein described 144 acre tract of land out of the Jas. Pollock Survey in Wood County, Texas. Other provisions in the contract read: "After acceptance of title by party of the second part (MacDonald), party of the first part (plaintiffs) agrees to give a good and sufficient deed to the above described premises." "This option is, however, on the following conditions: That should party of the second part fail to pay any sum or perform the covenants hereinbefore set out within the time specified, all rights and liabilities hereunder shall cease, and the money paid shall be retained as liquidated damages." This option agreement was filed for record in Wood County deed records on September 17, 1940, by MacDonald. At the time plaintiffs executed and delivered the option agreement to MacDonald, they also executed and delivered to him their full war-

ranty deed which purports to convey to the latter the mineral interest covered and described in the option agreement. Both instruments bear the same date and were acknowledged before the same notary public.

On the last day within which to exercise his rights under the option, namely, October 14, 1940, MacDonald issued and forwarded from Tyler by registered mail his check as of that date for $1000, and on the following day filed for record the deed that plaintiffs had theretofore delivered to him. On October 18, he conveyed a 5-acre interest to Bobby Manziel; on October 19, to Jno. Kraker a 1¾-acre interest; and on October 30, to H. W. Bell, a 3¼ acre interest. Kraker in turn, on October 19, conveyed to Kernel Hughes and E. L. Pinkston a 1-acre interest. Manziel conveyed on October 26, 1940, to H. A. Baker ½, Hughes ¼ and Pinkston ¼ of a 15-acre interest and to L. Neil and J. M. Stephens, trustee, on December 5, 1941, a 3½-acre interest, all deeds being forthwith filed for record in Wood County Deed Records. The check drawn on a Longview bank, payable to plaintiffs, was received by them October 15th or 16th. A week later, on their first trip to Atlanta, they endorsed and deposited the check in an Atlanta bank for collection. The check was returned by the Longview bank, unpaid, marked "Insufficient funds, maker's account charged 25¢." Plaintiffs on October 29, 1940, filed against MacDonald a formal trespass to try title action. A lis pendens notice was filed the same day in the County Clerk's office.

Under their fourth amended original petition, filed in May, 1946, in which MacDonald, Manziel, Kraker, Hughes, Pinkston, Neil and Stephens, trustee, were named as defendants, plaintiffs sought title and possession of the 10/144 royalty interest and cancellation of the royalty deed. Grounded on their allegations that defendants MacDonald and Manziel were either partners or MacDonald was acting as agent for Manziel, plaintiffs sought damages against the latter two for the present market value of any royalty held by the other defendants in the event they were found to be innocent holders for value.

At the close of the evidence offered by plaintiffs and that offered by some of the defendants who claimed to be innocent purchasers for value (Menziel and MacDonald offering no evidence), the court granted defendants' motion to instruct the jury to return a verdict for all defendants and thereupon entered judgment denying plaintiffs a recovery other than for $1000 plus $337 interest theretofore deposited in the registry of the court.

Plaintiffs tendered evidence in substance that at the time they delivered the deed to MacDonald, the three had the further agreement entered into orally that MacDonald be permitted to take the deed with him, so that if he decided to take the property under option that he wouldn't have to make a return trip to get the deed executed and all he would have to do would be to send them the money; that he would not put the deed on record and would return it, "if it didn't go through."

Under this alleged oral agreement, plaintiffs contend that the delivery in question was not such as to pass title to MacDonald, there being no intent to presently vest title at the time they gave him manual possession of the deed. "The rule is well settled that where a grantor delivers his deed to the grantee, and the same contains no express reservations or conditions, even though it is his intention that it is not to become operative until the happening of a certain contingency, such delivery is effectual to pass title presently." Coleman v. Easton, Tex.Com.App., 249 S.W. 200, 201. The oral agreement so urged was inadmissible to show that the deed was delivered upon a condition not expressed in such deed. Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097; Denman v. Hall, Tex.Civ. App., 193 S.W.2d 515; 30 C.J.S., Escrows, § 7, p. 1201; 14 T.J., pp. 824, 825. It is without controversy in this record that manual delivery of the deed was made by plaintiffs to the grantee named in the deed, which instrument was on its face regular, absolute and unconditional. No fraud, mistake or delivery to a third party in escrow was raised in the evidence.

Notwithstanding the view just expressed, the rights between plaintiffs and

MacDonald will be governed by the provisions of the option agreement which was executed in writing contemporaneously with the execution and delivery of the deed. Likewise the provisions of the option agreement will apply to the rights of Manziel if it be established upon another trial that MacDonald acted as the agent of or as a partner of Manziel when the former obtained the execution and delivery of the deed from plaintiffs.

After the check had been turned down and after J. R. Carlisle had traveled to Hawkins to get MacDonald to take the check up and failed to see MacDonald, the latter traveled to plaintiffs' home and there tendered the $1000 in money. It is without dispute that plaintiffs refused to accept this tender and another later made. The reasons for the refusal to accept the tenders so made were "they couldn't accept the money because the check had been turned over to their lawyer for collection"; "They wouldn't accept the money until they talked with their attorney" and "they had turned the check over to their attorney to settle as their lawyer seen fit." The evidence does not definitely disclose whether the tenders and above refusals with their reasons occurred prior to or some days after suit was filed. Plaintiffs do not claim that they at any time requested MacDonald to return the royalty deed to them. Checks issued by MacDonald on October 14, 1940, to other relatives of Mrs. Carlisle for royalty purchases in the same area, on similar deals as here involved, and drawn on the Longview bank were promptly paid upon presentation. The bank's endorsement on the check bearing date of October 26, 1940, would indicate that the check was not returned to plaintiffs prior to that date. If so, they filed their suit within three days thereafter. This formal trespass to try title action did not necessarily stamp it as a suit for debt upon the check.

■ We are not in accord with defendant's contention that the evidence supported as a matter of law an instructed verdict in their behalf on the theory that plaintiffs by their act and conduct after they received the check waived the forfeiture provision in the option agreement, and

plaintiffs were thereby relegated to an action for debt on the check. 3 T.J., p. 1049, and authorities there cited.

"The party who claims a waiver assumes the burden of proving the facts on which he relies to establish it, and the intention to waive must be proved like any other fact," 43 T.J., p. 900; 27 R.C.L., p. 910, and "Whether there has been a waiver is ordinarily a question of fact to be determined by the jury." 43 T.J., p. 900; 27 R.C.L. pp. 910, 912.

■ When plaintiffs endorsed the check and deposited it in their home bank to be forwarded to the Longview bank for payment, "the law indulges in no presumption from the creditor's acceptance of the paper that it is to operate as an absolute payment. The presumption is, on the contrary, that the parties intend that the paper shall operate only as a conditional payment. The condition implied is performance of the promise evidenced by the paper. Upon the paper's dishonor, the creditor may enforce the debtor's original obligation." Middlekauff v. State Banking Board, 111 Tex. 561, 242 S.W. 442; 48 C.J., pp. 617, 618; 32 T.J., pp. 659, 660; 40 Am.Jur., p. 763, et seq.; 33 Am.Jur., Sec. 27, p. 433.

■ The recordation of the option agreement constituted constructive notice to the world that plaintiffs had granted to MacDonald an option to purchase the interest from them within the 30 days period under the terms thereof. This option agreement recited that plaintiffs would execute the deed, not that they had executed a deed. An examination of the deed records by a prospective purchaser from MacDonald after the recordation of the deed into him and prior to the recordation of the lis pendens notice would be of such import as to cause a purchaser to conclude that MacDonald had performed, and having performed, plaintiffs had complied with the option agreement by making the deed. Under such status, the recordation of the option agreement was insufficient to charge any purchaser for value prior to recordation of the lis pendens notice of any alleged defect in MacDonald's title, with the deed into him then of record. Dixon v. Cargill, Tex.Civ.App., 104 S.W.2d 101; Link v.

Page, 72 Tex. 592, 10 S.W. 699. Kraker, Hughes and Pinkston having purchased during above period of time, and having paid a valuable consideration for their respective interest, the judgment with respect to them will be affirmed.

This record prevents a discussion of the disposition to be made of the interests claimed to be held by defendants Neil and Stephens, and of Manziel, if in fact he claims a present interest. It is to be observed that he acquired a 10-acre interest besides the 5 acres he allegedly acquired from MacDonald, and yet conveyed off 18½ acres. The record intimates that Manziel also acquired other interests. Bell and Baker are not parties to this suit.

That part of the judgment which decrees that plaintiffs take nothing as to Kraker, Pinkston and Hughes will be affirmed; and the judgment in all other respects is reversed and the cause remanded.

### On Rehearing.

Instead of a 15-acre royalty conveyance out of Manziel as erroneously stated in the original petition, he conveyed off to Baker ½, Hughes ¼ and Pinkston ¼ of 15/1440-acre interest in the 144-acre tract or only 1.5 acre. This correction in the acreage involved in above conveyance calls for a discussion of the 3.5-acre royalty interest acquired in December, 1941, by Neill and Stephens, Trustee, from Manziel.

At the time Neill and Stephens bought, the lis pendens notice then on file in the county clerk's office constituted notice of the pendency of the suit then on file which involved the 144-acre tract, wherein plaintiffs in a formal trespass to try title action were asserting the title and possession to the tract as against MacDonald, Manziel, Kraker and one Skipper. Arts. 6640 and 6643, R.C.S., Vernon's Ann.Civ.St. art. 6640, 6643. It was not until May 3, 1944, long after Neill and Stephens had acquired their interest, that plaintiffs for the first time in an amended original petition plead alleged facts as a basis for cancellation of their deed into MacDonald and for the first time prayed for a cancellation of such deed.

We are in accord with the contention that plaintiffs under their third amended original petition, filed May 3, 1944, for the first time plead facts as a basis for and sought affirmative equitable relief, namely, the cancellation of a deed, regular on its face.

■ It is asserted by Neill and Stephens that they holding the legal record title and plaintiffs as against them asserting affirmative equitable relief, grounded on an equitable title, the burden of proof rested upon plaintiffs to prove that Neill and Stephens were not innocent purchasers. Above rule reannounced in Dixon v. Cargill, supra, citing a host of decisions, would govern here were it not for the fact that Neill and Stephens puchased pendente lite.

"If a purchaser pendente lite believes he is entitled to protection under the statute as a good-faith purchaser, it is incumbent upon him to establish that fact." Hartel v. Dishman, 135 Tex. 600, 145 S.W. 2d 865, 868, and authorities therein cited.

This record is silent whether they purchased the 3½ acres "for a valuable consideration and without other notice, actual or constructive." Art. 6642, R.C.S.

The conclusions reached under the present status of the evidence in this record renders unnecessary the determination of whether or not the lis pendens notice of a formal trespass to try title action then pending constituted notice of an action for affirmative equitable relief sought in amended pleading filed after the purchase.

In all other respects we adhere to the views as expressed in our original opinion, and all other motions are respectfully overruled. The decree as announced in the original opinion will stand.