**CHEMICAL BANK & TRUST COMPANY,**
Relator,

v.

**Honorable J. M. FALKNER, Banking Commissioner of Texas, Respondent.**

No. A–9448.

Supreme Court of Texas.

June 26, 1963.

Rehearing Denied July 24, 1963.

Dyche, Wheat, Thornton & Wright, Houston, Jake Jacobsen, Austin, for relator.

Waggoner Carr, Atty. Gen. of Texas, Dudley D. McCalla, Asst. Atty. Gen., for respondent J. M. Falkner, Banking Com'r of Texas.

Graves, Dougherty, Gee & Hearon, Austin, Baker, Heard & Elledge, Willis E. Gresham, Houston, for intervenors.

HAMILTON, Justice.

The Chemical Bank & Trust Company as relator seeks a writ of mandamus to compel J. M. Falkner, State Banking Commissioner, to issue to it a certificate of authority to operate a bank in Harris County, Texas.

The facts are: The First Board of Directors of Chemical Bank & Trust Company, relator, applied for a state bank charter in the City of Houston, the application was approved by the State Banking Board, and the State Banking Commissioner delivered to relator a certified copy of the articles of association of the new bank. Two Houston banks, River Oaks Bank & Trust Company and the University State Bank, who protested the granting of the charter, filed suit in the 53rd District Court of Travis County appealing from the order of the State Banking Board. Service was had on the State Banking Board by serving J. M. Falkner, a member. Relator, after receiving the certified copy of the articles of association, proceeded with all required steps necessary to entitle it to a certificate of authority to start in business. The Commissioner, although he admitted that all necessary requirements had been met by relator, refused to issue the certificate of authority because of the pendency of the suit appealing from the Board's order. Relator then filed a motion for leave to file a petition for writ of mandamus in this court to require the Commissioner to issue the certificate of authority.

Subsequent to the action of the court in granting the motion for leave to file, the River Oaks Bank & Trust Company and the University State Bank filed a first amended original petition in the suit which they had filed against the Board in the 53rd District Court of Travis County.

In this amended petition, J. M. Falkner, as Banking Commissioner, was made a party. In addition, the Chemical Bank & Trust Company and its First Board of Directors were made parties. Although in said amended petition there was request for a restraining order and injunction against the State Banking Board and the Banking Commissioner enjoining the issuance of the certificate of authority, no such order has been issued.

The two banks, plaintiffs in the district court case, filed a motion for leave to intervene in the cause before this court, which was granted.

The principal question before us for decision is whether the Banking Commissioner has the authority and the duty to issue the certificate of authority to relator even though an appeal has been taken from the State Banking Board's order granting the charter to relator. We answer this question in the affirmative.

The question is clearly posed in a statement in a letter from J. M. Falkner, Commissioner, to the correspondent for the

Chemical Bank & Trust Company under date of February 7, 1963, as follows:

"It is clear from the wording of Art. 342–305, V.C.S. that I, as a member of the State Banking Board, in my ex officio capacity as Banking Commissioner of Texas, have fully performed my duties as a member of the State Banking Board after the application for the bank charter has been acted upon by the Board. When such application is granted, it then becomes my duty as Banking Commissioner of Texas, and not as a member of the Board, to approve, issue and deliver to the incorporators a certified copy of the Articles of Association upon the presentation to me of satisfactory evidence that all capital funds have been fully paid in in cash, which has been done in this case.

"I am uncertain at this time as to whether filing of an appeal from the order of the State Banking Board and the institution of suit in Cause No. 130,008, in the 53rd District Court of Travis County, Texas, by River Oaks Bank & Trust Company, et al. vs. State Banking Board, et al., in which I am named as a defendant member as Banking Commissioner of Texas, constitutes a suspension of my authority to perform duties required of me for the issuance of the Certificate of Authority during the pendency of such suit. As Banking Commissioner of Texas I am ready, able and willing to issue the Certificate of Authority since all of the legal requirements precedent to such issue have been fully performed as required by law, provided that I am authorized or directed to do so by an order of a court of competent jurisdiction. The sole reason for my refusal to issue the Certificate of Authority, as above stated, is that there is a question as to whether my authority as Banking Commissioner of Texas is limited by the fact that an appeal has been taken to a court of competent jurisdiction from an order of the State Banking Board of which I am an ex officio member."

■ Intervenors contend that this court has no jurisdiction to issue the writ of mandamus against the Banking Commissioner because he is not an officer within Article 1733 of the Revised Civil Statutes. That article reads:

"The Supreme Court or any Justice thereof, shall have power to issue writs of procedendo, certiorari and all writs of quo warranto or mandamus agreeable to the principles of law regulating such writs, against any district judge, or Court of Civil Appeals or judges thereof, or any officer of the State Government, except the Governor. Id.; Acts 1913, p. 107; Acts 1917, p. 140."

It is our opinion that the Banking Commissioner is an officer of the state government and is subject to writ of mandamus by this court by authority of the above statute. In determining whether the Commissioner is an officer of the state government, it is necessary to refer to the statute creating the office of Banking Commissioner. In 1943 the Texas Banking Code was passed by the Legislature. (All reference to articles in this opinion are to Vernon's Annotated Civil Statutes.) Article 342–103 established the Finance Commission of Texas, consisting of nine members divided into two sections, one of which was the banking section, consisting of six members. It is provided that the banking section shall serve as an advisory board to the Commissioner as to general policies and shall have such other duties and powers and authority as may be conferred upon them by law. The banking section shall make thorough and intensive study of the Texas banking and building and loan statutes to maintain the maximum degree of protection to depositors and stockholders, and shall report every two years to the Legislature by filing with the clerks of the Senate and House of Representatives the results of its study, together with its recommendations. The

banking section may promulgate certain rules and regulations for the conduct of state banks. Article 342–113. The Banking Commissioner presides over the meetings of the Finance Commission and each section thereof, but shall not vote except in the case of a tie, and does not preside when the meeting involves the selection of a Banking Commissioner. Article 342–111.

The Finance Commission shall, with the advice and consent of the Senate, elect a Commissioner who shall serve at the pleasure of the Finance Commission. The Commissioner shall be an employee of the Finance Commission and subject to its orders and directions. Article 342–207 provides as follows: "The Commissioner shall supervise and shall regulate, as provided in this Code,[1] all state banks and shall enforce the provisions of this Code in person or through the Deputy Commissioner, the Departmental Examiner or any examiner. * * *"

The powers given the Commissioner by the Code to carry out his duties of supervising and regulating state banks are numerous—so many it would burden this opinion to enumerate them. Suffice it to say that the Commissioner's control over state banks is extensive. While the statute does say the Banking Commissioner is an "employee of the Finance Commission and subject to its orders and directions", he is far more than an employee of the Finance Commission because of the many powers and duties given him directly by the Legislature which are not subject to the control of the Finance Commission. The fact that the statute denominates the Commissioner as an employee does not necessarily mean that he is not an officer of the state government.

The Supreme Court of Texas in Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900), quotes with approval from Mechem on Public Officers, § 1:

"Public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public."

Hence, calling the Commissioner an employee and giving him tenure at the pleasure of the Finance Commission does not prevent the Banking Commissioner from being an officer of the state government. As pointed out, the general administration of banking affairs is carried out by the Banking Commissioner. In exercising his duties he is carrying out the sovereign functions of the government for the protection and benefit of the public and as such he is a state officer as stated in Article 1733. See Betts v. Johnson, 96 Tex. 360, 73 S.W. 4; Middlekauff v. State Banking Board, 111 Tex. 561, 242 S.W. 442.

■ This holding does not mean that any "officer" of the State may be subject to mandamus under Article 1733. There are many persons in the state government who meet the general requirements of public officers. See Knox v. Johnson, 141 S.W.2d 698 (Tex.Civ.App.1940), writ refused. However, Article 1733 extends only to a certain limited class of officers. In Betts v. Johnson, supra, Judge Gaines concluded that the predecessor to Article 1733 only extended to heads of departments of the state · government. He pointed out the rationale of the statute as follows:

"* * * These officers must reside, and their offices must be kept, at the seat of the state government, and their official functions are to be performed there. A mandamus proceeding against the head of a department, as a rule, involves questions which are of general public interest and call for a speedy determination. That they are of far more importance than those ordinarily arising in mandamus suits

1. Articles 342–101 through 342–911.

against other officers, whether of the state, or of a district, or a county, is, as we think, obvious."

■ The authority and duty of the Banking Commissioner to issue a certificate of authority is controlled by the statute. Article 342–307 provides:

"No state bank may do business until it receives a certificate of authority from the Commissioner, which shall not be delivered until it has elected the officers and directors named in the application for charter or other officers and directors approved by the Commissioner; shall have adopted bylaws approved by the Commissioner; and shall have complied with all the other requirements of this Code relative to the incorporation of state Banks. * * *"

This is one of the powers given the Commissioner which is not under the control of the Finance Commission.

Since the Banking Commissioner has admitted that all prerequisites entitling the Chemical Bank & Trust Company to a certificate of authority have been complied with, all that remains to be done for the bank to begin operation is the ministerial act of the Commissioner of issuing the certificate of authority. Without question the writ of mandamus would lie to compel him to issue such certificate unless the filing of the appeal from the Board's order granting the charter will prevent. The fact that the statute is worded in the negative does not change the duty from ministerial to discretionary. The negative requirement that the Commissioner may not act until certain steps are taken implies that the Commissioner must act when those steps have been satisfactorily completed.

■ Intervenors contend that the Banking Code provides an appeal from the Board's order for a trial de novo by the preponderance of the evidence rule, the appeal thereby nullifying and vacating the order of the Board. On the other hand, relator argues that Article 342–115 only provides appeal to determine if the findings and determinations of the Banking Board are supported by substantial evidence, the order being valid until set aside by the court.

Article 342–115 of the Banking Code of 1943 provides:

"* * * The orders of the State Banking Board may be appealed to a court of competent jurisdiction and the trial in the court of competent jurisdiction shall be de novo the same as if said matter had been originally filed in such court. * * *"

We agree with intervenors that the above provision contemplated a trial de novo, the issues that were before the Banking Board to be tried by the courts under the preponderance of the evidence rule. By providing that the trial shall be before the court "the same as if said matter had been originally filed in such court", the Legislature intended that the court should be placed in the same position as the State Banking Board.

To obtain a charter, an applicant must get affirmative findings on the following elements:[2]

"1. A public necessity exists for the proposed bank.

"2. The proposed capital structure is adequate.

"3. The volume of business in the community where such proposed bank is to be established is such as to indicate profitable operation of the proposed bank.

"4. The proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable.

"5. The applicants are acting in good faith."

2. Article 342–305, V.A.C.S.

The appeal provision places the duty on the courts to make these determinations. The placing of this duty on the courts makes the proceedings adversary with each party—applicant and contestant—advocating its own special interests. Each party would introduce evidence sustaining its own point of view. That would leave no protection for the general public since the courts are not equipped to make an independent investigation into the facts and circumstances. Banking has always been a field of great public interest. There is more involved than the rights of the individuals who wish to engage in the business of banking. The general populace has an economic interest in the financial welfare of banking institutions. They place their savings there for safekeeping, for example, and if they are not given protection by the law, the chances are great that the public will be hurt. The collapse of banking institutions in the 1930's is illustrative of this point.

Hence, the Legislature originally considered each applicant for a bank charter and passed special laws to create individual banks. However, the business of the Legislature became too great, so the duty of granting charters was delegated to administrative agencies and personnel. As exemplified in Article 342–305, the Legislature has set some particular elements necessary to get a charter (Nos. 2, 4 and 5), but it has also provided flexibility by establishing the more general requirement of "public necessity". The determination of "public necessity" by the State Banking Board involves a determination of public policy which is a matter of legislative discretion which can not constitutionally be given to the judiciary. That would be a violation of Article II, Section 1 of the Constitution of Texas, Vernon's Ann.St., which provides:

"The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

It is argued that this case is controlled by Key Western Life Ins. Co. v. State Board of Insurance, Tex., 350 S.W.2d 839 (1961), and State Board of Insurance v. Professional and Business Men's Ins. Co., 359 S.W.2d 312 (Tex.Civ.App.1962), writ refused, n.r.e., which upheld trial de novo in the insurance field. State Board of Insurance v. Professional and Business Men's Ins. Co. held the requirements to get an insurance charter were judicial and could be determined by the courts. However, it is the determination of "public necessity" in the banking area which is legislative, and that is not a requirement in the insurance field.

It is contended that the Key Western case laid down a broad rule for determining whether a function of an administrative agency is judicial or legislative. The court said that judicial action is "particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect." We point out, however, that the court did not intend to lay down a broad pronouncement of administrative law. The language was used only as an aid in reaching the answer to the specific question facing the court. Key Western, supra, 350 S.W.2d at page 847. The heart of the decision in the Key Western case was that the statute did not give the Insurance Board legislative discretion in approving insurance policies. The court distinguished Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699 (1959) on the ground that there was a grant of legislative discretion to the City Council in that case. There is a grant of legislative discretion to the State Banking Board under Article 342–305, hence this case is distinguishable from Key Western and falls within the logic of Davis v. City of Lubbock.

We hold the appeal provision providing for trial de novo by a preponderance of the evidence to be unconstitutional and of no force and effect.

 Holding the above provision of the statute unconstitutional does not mean that intervenors do not have a right of appeal. When a vested property right, as each intervenor has in its charter, has been affected by the action of an administrative agency, thereby invoking the protection of due process of law, there is an inherent right of appeal. Brazosport Savings & Loan Ass'n v. American Savings & Loan Ass'n, 161 Tex. 543, 342 S.W.2d 747 (1961); City of Amarillo v. Hancock, 150 Tex. 231, 239 S.W.2d 788. To afford due process of law, only questions of law need be considered. Hence, the appeal from the order of the Banking Board only involves determining if there is substantial evidence to support the Board order so that it is not illegal, arbitrary, or unreasonable. Brazosport Savings & Loan Ass'n v. American Savings & Loan Ass'n, supra.

 An appeal under the substantial evidence rule negatives any idea that the Board's order approving the application is vacated or nullified by the filing of the appeal. Southern Canal Company v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619. Since the order granting the application is not nullified or suspended by the appeal, but is still in full force and effect, there is no valid ground for the Commissioner to refuse to issue the certificate of authority, and relator is entitled to have writ of mandamus issue.

We assume that in the light of this opinion the Commissioner will issue the certificate of authority as requested by the relator. Otherwise, writ of mandamus, as prayed for, will issue.

CALVERT, Chief Justice (dissenting).

I respectfully dissent.

I agree with the holding that the Banking Commissioner is a state officer within the meaning of Art. 1733, and that, in a proper case, this Court has jurisdiction to issue a writ of mandamus to him.

I agree also with the holding that Art. 342–115 provides for a true *de novo,* preponderance of the evidence, trial.

I disagree with the holding that the provision for *de novo* trial is unconstitutional.

The five findings which must be made by the State Banking Board incident to the granting of a bank charter are set out in the Court's opinion and need not be repeated here. The only one of the issues which is said to render the granting of charters a matter of pure public policy is that which requires a finding that "A public necessity exists for the proposed bank."

We have held that the legislative function of determining matters of pure public policy may not be conferred on the judiciary, Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699, 711, and I adhere to that opinion; but I do not regard a determination that there is a public necessity for a bank in a particular area to be a determination of public policy. To me, the question of whether there is a public need for a bank in a given area is a pure fact question—one which a trial judge or jury could decide on evidence available for introduction in court.

The Court's fear for the interests of the public if full judicial review is allowed is, I suggest, without warrant, as is its concern that the adversary system of trial would leave undeveloped that evidence most favorable to the public interest. The fixing of utility and freight rates is much more complicated and intricate and calls for much greater expertise, and yet full judicial review is allowed in both fields. See cases cited in Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619, 624. We have no evidence that the public interest has suffered from full judicial review of rate orders of

administrative bodies, and no reason to believe that the courts would be less concerned than the State Banking Board with the public interest. There is no better guaranty of full development of evidence than trial in an adversary proceeding. And while it is true that trial courts are not equipped to make independent investigations of facts, all admissible evidence of facts developed by the administrative agency would be available at the trial.

In *Key Western Life Ins. Co. v. State Board of Insurance,* Tex.Sup., 350 S.W.2d 839, we quoted with approval from *State ex rel. Patterson v. Bates,* 96 Minn. 110, 104 N.W. 709, 711, for the proposition that "when duties of an ambiguous character are imposed upon a judicial officer any doubt will be resolved in favor of the validity of the statute, and the powers held to be judicial." It seems to me that the *de novo* trial provision of Art. 342–115 is doubtful at worst.

There is nothing to be accomplished by pursuing this matter at length. It is well to remember, however, that the problem with which we are concerned is not the *wisdom* of the act of the Legislature in requiring *de novo* review by the judiciary of the State Banking Board's decision, but the *constitutional power* of the Legislature to require it. While each case is decided on its own facts, this decision foreshadows a similar fate for all legislative acts which require true *de novo* review of administrative orders based on findings of public convenience and necessity.

It is my opinion that the suit filed in the district court effectively nullified the order of the State Banking Board granting a charter to relator, and the Banking Commissioner is, therefore, under no legal duty to issue the certificate of authority.

I would deny the petition for writ of mandamus.

CULVER and STEAKLEY, JJ., join in this dissent.