J. H. EDDY, and others, Appellants, *v.* JOHN SIMPSON, and others, Respondents.

| 3 | 249 |
|---|---|
| 136 | 207 |

| 3 | 249 |
|---|---|
| 141 | 135 |

The foundation of a right to water is the first possession; and this right is usufructuary, and consists not so much in the fluid itself, as in its use. The owner of land over which it flows has the right to its use during its passage. This right is not in the *corpus* of the water, and only continues with its possession.

When the water of a stream leaves the possession of a party, all his right to and interest in it, is gone.

If the water of stream A. be diverted from its natural channel by C. and used by him, and then flows from his works into stream B. by natural channels, it is lost to the first possessor, and he cannot reclaim it on the ground that the water of stream B. was increased by his means.

If the water of stream B. be in the possession of another party, D., the addition made to it, flowing from the works of C., becomes a part of the body of water, and D. has the right to its possession and use, and C. has no right to withdraw it.

APPEAL from the Tenth Judicial District.

This action was brought to recover damages for interfering with the water right of the plaintiffs. The plaintiffs had prior occupancy of the waters of Shady Creek, by means of a dam and a ditch constructed by them, and used the same for mining purposes. The defendants, by like means, obtained the use, for like purposes, of other neighboring streams, and after using the water thereof, it flowed by natural channels into Shady Creek above

plaintiffs' dam.   Defendants then built a dam above plaintiffs' dam on Shady Creek, and withdrew a portion thereof from plaintiffs' works, so as to leave them deficient in supply, and at times without water, for their purposes.   The defence was based upon the fact, that defendants having by their works added to the quantity of water in Shady Creek, that they had a right to withdraw a like quantity for their own use ; and this was the question at issue.   The facts will be found very clearly stated in the opinion of the court.

The District Court charged the jury as follows :—

" As a general principle, the party who first uses the water of a stream, is by virtue of priority of occupation entitled to hold the same.   If a company or association of miners construct a ditch, to convey water from a running stream for mining or other purposes, and they are the first to use the water, locate and construct the ditch, they are legally entitled to the same as their property, to the extent of the capacity of the ditch to hold and convey water.   For, if it appears that there is more water running in the stream than the ditch of the first party can hold and convey, then any other party may rightfully take and use the surplus, and it does not matter whether the excess of water be taken from a point above or below the dam of the first party.

" In the case before the court, the plaintiffs are clearly entitled to as much water as they originally had in Shady Creek, but no more, and if the defendants, by constructing a ditch and dam at a point further up the stream, convey water therefrom, so as to diminish the quantity first used by the plaintiffs, then they are liable to them for damages.   If the defendants, by means of their ditch from ' Grizzly Cannon,' and ' Bloody Run,' conveyed into Shady Creek as much water as they afterwards took from it, by their second ditch, then plaintiffs cannot be damaged.

" The doctrine of confusion or mixing of property, does not apply.   If defendants' ditch had conveyed the water into the ditch of the plaintiffs, then no doubt plaintiffs could have claimed the whole ; but it emptied into Shady Creek a considerable distance above the plaintiffs' dam ; and the point at which the second ditch takes off the water is still above the plaintiffs' dam, and in the natural channel of Shady Creek."

——, for appellants,

Cited 2 Blackstone, 18 ; Angell on Water Courses, 86, 89, 116. If water runs out of my pond into another, I cannot reclaim it. The right is usufructuary, and is lost with loss of possession.

*Rowe* and *Dun*, for respondents.

A mere prior occupation gives no exclusive right to the water above or below, especially where not claimed by a riparian proprietor. Platt *v.* Johnson, 15 Johns. 213 ; 17 Johns. 306 ; 4 Mason, 397. A prescriptive right to prior occupancy requires fifteen years to sustain it.

Riparian owners and all others must return the water to its natural channel before they can claim a prescriptive right.

Water can be diverted if the quantity required is not diminished. 3 Pick. 269 ; 8 Mass. 136.

WELLS, Justice, delivered the opinion of the court. HEYDEN-
FELDT, Justice, concurred.

From the record in this case, it appears that the plaintiffs constructed a dam across a stream called Shady Creek to French Corral, where the water was used by plaintiffs for mining purposes.

After the construction of plaintiffs' work, and plaintiffs had been for a considerable time in possession of and using the waters of Shady Creek, the defendants constructed a work of a similar nature, whereby they brought water from Grizzly Cannon and Bloody Run, to a place known as Cherokee Corral, where the water from defendants' ditch was used for mining purposes. The water thus used by defendants at Cherokee Corral, from that point found its way by natural channels and by the natural level of the country, into the waters of Shady Creek, above the dam of plaintiffs.

The defendants subsequently constructed a dam above the plaintiffs' dam, run a ditch to French Corral, and diverted a portion of the waters of Shady Creek, so that at times no water descended to plaintiffs' works, the entire quantity being used by defendants' ditch above.

The point made by the defence, on the trial of the cause below, was, that by the act of the defendants the waters of Grizzly

Cannon and Bloody Run, were caused to flow into Shady Creek ; that therefore the defendants had a right to construct a dam and ditch above plaintiffs, and carry off the same quantity of water from Shady Creek, that flowed from defendants' ditch at Cherokee Corral.

This defence is set up substantially in the answer of defendants, and the court below held, that defendants had an exclusive right to the water which they had caused to flow into Shady Creek, and could withdraw the same. The instruction refused and the charge given by the court, both assume this right in the defendants.

In considering the question presented, it is to be observed, that the foundation of the plaintiffs' right was their first possession. Of all the waters running into Shady Creek, they were in the possession and use until defendants constructed their ditch above them, running to French Corral. There is no pretence of right in the defendants to carry off water from Shady Creek, except a claim of property in the water from Cherokee Corral.

It is laid down by our law writers, that the right of property in water is *usufructuary*, and consists not so much of the fluid itself as the advantage of its use.

The owner of land through which a stream flows, merely transmits the water over its surface, having the right to its reasonable use during its passage. The right is not in the *corpus* of the water, and only continues with its possession. Angell on Water Courses, p. 86. A party cannot reclaim water that he has lost, 2 Black. Com. p. 18. When the water of Grizzly Cannon and Bloody Run, left the possession of the defendants at Cherokee Corral, all right to, and interest in, that water was lost by the defendants. It might be made the property of whomsoever chose to possess it. Without the agency of the defendants, it found its way into Shady Creek, joining the waters then in the possession of the plaintiffs, and became a part of the body of water used and possessed by them.

As defendants had lost all right in the water, they could have no right to withdraw it from the possession of the plaintiffs. The rule laid down by the court below, while it is a departure from all the rules governing this description of property, would

be impracticable in its application, and we think it much safer to adhere to known principles and well-settled law, so far as they can be made applicable to the novel questions growing out of the peculiar enterprises in which many of the people of this State are embarked.

The judgment of the court below will be reversed, and the cause remanded for a new trial.