## KIRKPATRICK et ux. v. SURKEY et al.
### No. 8455.

Court of Civil Appeals of Texas. San Antonio.
June 11, 1930.

Rehearing Granted Oct. 29, 1930.
Rehearing Denied Dec. 10, 1930.

Cunningham, Moursund & Johnson, of San Antonio, for appellants.

Hicks, Hicks, Dickson & Lange, Fagan Dixon, and Fred H. Sims, all of San Antonio, for appellees.

COBBS, J.

Appellees sued appellants on an alleged written contract, and also upon a demand as quantum meruit in connection therewith, for the value of services performed, which consisted in interviewing the various owners of San Pedro avenue property, consulting and advising with them, and convincing the property owners of the advisability of petitioning the city to widen said street and of securing their signatures to the petition to widen said street, and of filing the petition in proper order with the city authorities for their action thereon.

Appellants made, executed, and delivered to appellees in connection therewith the following written agreement:

"George Surkey and J. W. Barber,
   "City.
"Dear Sir:

"In connection with your undertaking the work necessary to be done for the widening of San Pedro Avenue from Warren Street north, we hereby agree and promise to pay you for such service, when the work is completed, One Dollar ($1.00) per front foot on each piece of property owned by the undersigned on said street.
"[Signed]          Mrs. Bertha Kirkpatrick
                    "M. S. Kirkpatrick."

The plaintiffs alleged that these defendants became obligated and bound "when the said work of widening San Pedro Avenue was completed in the month of December, 1928," to pay the amount agreed upon. The trial court held this writing was "too vague, indefinite and uncertain to be enforcible," but further held "such recovery being awarded and granted upon plaintiffs' plea of quantum meruit, which the Court finds to be supported by an implied oral agreement," and entered judgment for appellees in the sum of $236.90, with

interest at 6 per cent. per annum from date of judgment, together with all costs of court.

As the evidence supports the judgment of the trial court that the services were rendered at the instance and request of appellants and were reasonably worth the amount of said judgment, we do not feel inclined to disturb the same.

Appellee George Surkey testified as follows:

"I got the signatures of Mrs. Bertha Kirkpatrick and M. S. Kirkpatrick to that paper at Mr. Edge's hotel. In getting those signatures I made about three visits. * * *

"As to the nature of my work to be undertaken in connection with the widening of San Pedro Avenue, Judge Seeligson, Mr. Dalkowitz, Hagan and others decided it was necessary to get a petition from the property owners on the street asking the City to widen the street,—that was one of the most important matters that we had, and to get their signatures; explain to them the advantages of it; also to explain that the land belonged to the City; that it was designated a street of eighty-two feet instead of forty, as it was at that time,—we explained that and of course it took a great deal of time. There was many of those property owners up there that did not believe that the City owned the property. I explained to the people that we went to see that we wanted a widening of the street and that the City would widen it,—we had that information from the Mayor and Commissioners. In pursuance of that contract I secured these signatures. I personally went out and did this work."

In connection therewith, Judge A. W. Seeligson testified:

"I sent for Mr. Surkey, who lived on San Pedro Avenue, and discussed with him whether or not he would take charge of the work. I discussed with him my desire to have him undertake to get the consent of the property owners to the widening of San Pedro Avenue. I also discussed with him the matter of his compensation for his work, and we decided one dollar per front foot would be reasonable compensation.

"I dictated the instrument you now hand me and my signature appears thereon.

"I consider the compensation heretofore stated by me for such work to be reasonable, because I have had a lot of experience in these widening projects.

"The widening of San Pedro Avenue has been completed from Warren Street north, probably about a year,—maybe not quite that long.

"I have been interested in a number of widening projects and know the compensation that has been paid in many instances prior to this time; I know the compensation in many instances that is being paid today in widening projects, and my experience in widening projects goes back many years,—first, when they first widened Main Avenue fifteen feet some twenty years ago, and I have watched closely all widening projects in the north part of town since that time. Before you gentlemen came here the most famous widener we ever had was one Selig Deutschman and I frequently knew the compensation that he received in widening projects, and was interested frequently in streets that were being widened, and I really know a good deal about it, to be perfectly frank with you. I know what the compensation is in this case and in my opinion it is reasonable.

"I lived a long time on San Pedro Avenue and have been watching property values on that street rather closely. To a certain extent I was acquainted with property values on San Pedro Avenue before the widening from Warren Street north,—that included my property—and I have been watching the value of my property and the property of my neighbors, since the widening. In my opinion property on San Pedro Avenue, north of Warren and between Warren Street and the Springs, being that part of San Pedro Avenue that has been widened, I think the widening has added to the value of all that property not less than twenty-five per cent.

"As to what was the nature and character of the work Mr. Surkey undertook to do, it required somebody to do the general solicitation among the property owners, and that was the reason that I sent for Mr. Surkey, because I felt that he could and would do it, and the general plan was that he should go to the property owners; explain to them that it was best to get this street widened, and the property owners, it was necessary for them to agree all along; they would be compelled to put down their sidewalks, put down their curbing and pay for a certain percentage of the paving in front of their property. The property that we all had possession of, everybody on San Pedro Avenue north of Warren Street, was property that the City claimed as its property; hence, we were not donating any property,—the city was taking its own property,—that is the way it was explained to us by the City authorities and the engineers of the City,—we were to be put back, put down our sidewalks and curbing at our expense and pay a certain part of the paving. Mr. Surkey was to go and get everybody to sign up. He was to make an explanation of the nature of the work, he was the only one that was to do it,—explain to everybody just exactly what the City would do if the property owners would sign up and move back from that property of which they were in possession. I know Mr. Surkey undertook to do this work, —the details of how he did it, I don't know. I would not know that it took up a great deal of his time, but I know that it took up some of his time.

"It was necessary to petition the City to undertake this work of widening the street, and

906

we had numbers of meetings with them,—Mr. Surkey and other members of the committee, and myself,—had numbers of meetings with Mr. Steffler and other officials in the effort to get this work started and get it finished. It could not have been done in any other way."

Mrs. Kirkpatrick in her testimony made the following statement:

"Mr. Surkey said he had had a great deal of trouble trying to get enough signers and wanted us to help him out."

In the case of Barrow v. Booth (Tex. Civ. App.) 227 S. W. 1113, we find a correct statement of the law. It is stated that "quantum meruit rests on the principle that a person will be compelled to pay for services if he stands by and permits another to render such services, under such circumstances as to convince any reasonable man that they were being done with the expectation of being paid for them, and no effort is made to prevent the rendition of such services. This proposition of law is based upon the knowledge of the person served that the services were being rendered for him."

A written agreement may be so vague as to be unenforceable, but yet form the basis of a recovery on quantum meruit. From the day of signing the agreement, and throughout the work to the day of its completion, the appellants stood by and without any protest saw the improvements going on. They might have rescinded the agreement and stopped the work if they had then felt so inclined.

Where a witness testifies as to his experience in street work for a period of twenty years, and has knowledge of the compensation charged and received for such work, and knows the character of the work done and the compensation claimed, he is qualified as an expert to testify as to whether in his opinion the charge for such work is reasonable. Chicago, R. I. & G. Ry. Co. v. Hanna (Tex. Civ. App.) 273 S. W. 280; Wandling v. Broaddus (Mo. Sup.) 10 S.W.(2d) 651. And so also when a witness has lived a long time on a street and watched its growth and development, he is competent to testify as to values on that street. Central State Bank of Coleman v. Henderson (Tex. Civ. App.) 286 S. W. 518.

Appellants knew the services were being performed at their request, and are liable for the value of the same measured by the benefit conferred on their property by reason of such services, independent of any fact that a like service was being performed for others.

If the petition does not disclose one of the parties to be a married woman and no plea of coverture is filed in the trial court, and is made for the first time in the assignment of errors in an appellate court, the law will regard that defense waived and it will not be considered for the first time in the appellate court. George W. Caldwell et al. v. David Brown and wife, 43 Tex. 216; Taylor et al. v. Hustead & Tucker (Tex. Civ. App.) 243 S. W. 766; Snyder-Bell Grocery Company v. Hamilton (Tex. Civ. App.) 276 S. W. 752; Whitney Hardware Company v. McMahan et al., 111 Tex. 242, 231 S. W. 694; Crutcher et al. v. Sligar et al. (Tex. Civ. App.) 224 S. W. 227.

Though a written agreement may be too vague and uncertain to be performed, yet it is enforceable after the services have been performed thereunder. Callahan Construction Co. v. Compere (Tex. Civ. App.) 285 S. W. 686; Stallings v. Smith (Tex. Civ. App.) 11 S.W.(2d) 344; Long Bell Lumber Company v. Futch et al. (Tex. Civ. App.) 20 S.W.(2d) 1076.

We have carefully considered the facts in this cause, as well as the briefs of the attorneys, and have reached the conclusion that there is no error in the judgment, and that the case has been fairly tried and justice administered.

The judgment is affirmed.

### On Motion for Rehearing.

SMITH, J.

██ It was properly held by the trial court, and by this court in the original opinion, that the written contract was a nullity, and that appellee could not recover thereon. This holding had the effect of relegating appellee to recovery upon the quantum meruit, requiring him to show that he performed certain services at the instance, with the knowledge, and for the benefit of appellants, for a stipulated or reasonable amount. There was no evidence that appellee entered into any parol agreement with appellants concerning the transaction, or that appellee performed any services at the instance or for the special benefit of appellants, or that appellants agreed to pay appellee for his activities in getting San Pedro Avenue widened. Because of such failure in proving his case, he could not recover upon the quantum meruit.

The question of estoppel or acquiescence is not in the case. There was no proof that appellants knew appellee had any more interest in the street improvement than any other property owner on the street, or that his activities in the project were induced by any hope of reward other than the enhancement of the value of his property along with that of appellants and others similarly situated.

The public improvement enhanced alike the property of appellee, of appellants, and of all others facing the street, and there was no evidence that appellants were apprised of appellee's intention to charge them for his services in obtaining the consent of other property owners to the improvement. It is true that appellants executed the written contract sued on, but they as well as others testified that they executed the instrument upon the assurance of appellee, and in the belief, that it was a petition to secure the public improvement, with no intimation that it was a promise to pay appellee for his services in securing their

consent to the improvement. This testimony does not appear to have been denied by appellee, and while it may not have had the effect of defeating a written contract otherwise valid and enforceable, it must be given the effect of defeating appellee's claim that they entered into a parol or implied agreement to pay appellee for services for which they were not otherwise liable. In short, and again, the written contract being a nullity, no parol or implied contract was proven, and therefore appellee could not recover upon the quantum meruit.

Other questions are raised in the appeal, but as they probably will not occur upon another trial it is not deemed necessary to discuss them here.

This opinion, in which all concur, will be substituted for the original opinion, now withdrawn.

For the reasons stated, appellants' motion for rehearing is granted, the judgment will be reversed, and the cause remanded.