**SOUTH TEXAS WATER CO. v. BIERI.**

No. 12275.

Court of Civil Appeals of Texas.   Galveston.

Feb. 14, 1952.

Rehearing Denied March 27, 1952.

J. E. Davant, of Bay City, Masterson & Pope, Masterson, Williams & Smith, Fred L. Williams, Jr., of Angleton, for appellant.

Rucks, Enlow & Kee, A. R. Rucks, Floyd Enlow, Leland B. Kee, of Angleton, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellee, Ed Bieri, against Southern Warehouse Corporation and appellant, for the recovery of the sum of $11,557.32 alleged to have been appellee's share of the amount realized by the Warehouse Corporation from its sale, under appellee's authority, of the 1948 rice crop of appellee and his brother. Southern Warehouse Corporation, in its answer, alleged that it was merely a stakeholder and paid into the registry of the court the sum of $11,557.32. It filed a cross-action against appellant and appellee and prayed that it be discharged from liability to both. It impleaded The First National Bank of Angleton, alleging that it had delivered its check to the bank for $11,557.32 payable jointly to appellant and appellee, and asked that the check be cancelled. It prayed for reasonable attorney's fees. The First National Bank of Angleton answered that said check had been returned to the maker. It sought attorney's fees from the Warehouse Corporation.

In his answer appellee denied that he had made a contract with appellant to purchase water in 1948. He denied that appellant had furnished him with water in that year.

In a trial before a jury five special issues were submitted. The jury found, in answer to special issue No. 1 that appellant did not furnish appellee with water during the irrigation season of 1948. Under instructions from the court, the jury made no answers to the remaining issues submitted.

Appellee, Ed Bieri, owned and farmed several hundred acres of land in Brazoria County in the year 1948, bounded on the east by Flores Bayou, a public stream. He had constructed and maintained on his premises a reservoir of some 35 acres of land area. He had also drilled on his premises two deep wells and had installed pumps in Flores Bayou from which he irrigated his rice crop.

Appellant is an incorporated irrigation company. It maintains a system of canals, locks, pumps and ditches to the north of appellee's land. A ditch, commonly known as the "Big Ditch", had been constructed and was maintained by a drainage district. It crossed a small portion of appellee's lands and emptied into Flores Bayou. Other man-made ditches were constructed and maintained by the drainage district.

A group of farmers, referred to as "Bayou Farmers", farmed lands north and south of appellee's lands.

Appellant, South Texas Water Company, had a permit to appropriate some 40,000 acre feet of water to be used in irrigating approximately 20,000 acres of land within the year 1948. The permit provided for two acre feet of water to be used for each acre of land irrigated. It is generally recognized that two acre feet of water are required to properly irrigate an acre of land being farmed to rice.

Appellant alleges that it had contracted with several Bayou farmers, who were farming several thousand acres of land outside its permit area, to furnish them irrigation water during 1948. However, it did not obligate itself in writing to furnish this water under any definite arrangements though it asserted its right to collect the full amount of the usual water rental charge from them if it had any water available after supplying its contract consumers.

Appellant, South Texas Water Company, relies upon three theories for the recovery from appellee of the sum of $10,257.96. Its first theory of recovery is based upon an alleged oral contract with appellee similar to a contract between appellant and the Bayou farmers.

Appellant alleges that it had agreed to furnish water to the Bayou farmers for the 1948 season if such water was available from run-off or from its source of supply after it had furnished water under its existing contracts, and that the Bayou farmers had agreed to accept such arrangement and to pay appellant $12 per acre for each acre of land so irrigated and that the Bayou farmers, other than the appellee, had agreed to pay a part of the water rent of a non-co-operating Bayou farmer, one Novak.

Appellant relied alternately upon the doctrine of quantum meruit. It alleged that, at the request of appellee, it had furnished water for the irrigation of appellee's 1948 rice crop and that appellee had received and used such water for the irrigation of his crop. It sought the reasonable and customary charges for such water alleged to be $12 per acre for each acre thus irrigated.

Appellant also alleged alternately that it had delivered water into Flores and Austin Bayous for the use of a large number of farmers, including appellee, and that appellee, knowing such fact, had withdrawn and converted part of such water and had used it to irrigate his 1948 crop, and had become liable to appellant for such water and services, alleged to be $12 per acre for the full acreage farmed by appellee.

Appellant's president, Morris Savage, testified in substance that he had had a conversation with appellee with reference to the Irrigation Company furnishing him water for his 1948 crop; that they had had a deal with the Bayou farmers that they would furnish them with water for their 1948 crops if they, the Bayou farmers, would pay part of the water rent of one Novak, but that Mr. Bieri would not agree to pay any part of the Novak water rent, and that he had not mentioned to Mr. Bieri the amount of the water rent for 1948.

Appellee testified in substance that Mr. Savage had stated to him that he did not know that the company would have the water to spare, but that if they had some to spare they would let him have some and that he had stated to Mr. Savage, "If you furnish me water, I will do the right thing about it."

In its order overruling appellant's motion for an instructed verdict, the trial court held that the evidence, considered in the light most favorable to appellant, was insufficient to establish a binding contract by appellant to furnish water for the irrigation of appellee's rice crop for 1948.

Under its first four points of alleged error, appellant contends that the trial court erred in holding that the evidence was insufficient to raise an issue of fact for the jury as to whether appellant and appellee had made a contract for the 1948 irrigation season. It contended that the court erred in refusing to submit to the jury issues inquiring as to whether appellant and appellee made a water contract in the 1948 irrigation season, in failing to include in its charge issues presenting appellant's alternate defense of quantum meruit and in refusing to submit to the jury 14 issues requested by appellant which it contends present affirmatively the three theories which are made by its pleadings.

Appellant also complains of the action of the trial court in refusing to include in its charge to the jury definitions of direct and circumstantial evidence.

The finding on what we deem to be ample evidence that appellant did not furnish to appellee any water for his 1948 rice crop, we think, disposes also of appellant's defenses that appellee is indebted to it on the quantum meruit and conversion theories for water furnished and the failure to submit these issues would constitute harmless error.

In 10 Tex.Jur. 27, par. 13, it is stated that, "To constitute a contract the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms; and all of them must assent to the same thing in the same

sense at the same time. Their assent must comprehend the whole propositon, and the agreement must comprise all the terms which they intended to introduce into it."

■ As to whether or not the trial court erred in holding that appellant's evidence was insufficient to raise an issue of fact as to whether appellant and appellee made a water contract for the 1948 irrigation season and whether the court erred in refusing to submit such issue to the jury, our courts have uniformly held that there is no contract unless the circumstances are such as to preclude one of the parties from denying that he agreed to the terms of the contract.

In the early case of Summers v. Robert Mills, 21 Tex. 77, 78, the Supreme Court of this State stated the rule to be that "* * * there is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense."

In the case of Greater Houston Suburban Corporation v. Dupuy & Mullen, Tex.Civ. App., 176 S.W. 668, the jury found that a contract existed. In reversing the trial court, the Court of Civil Appeals held that a consideration of the entire testimony led to the conclusion that the minds of the parties did not meet upon a material element necessary to constitute the contract and that there was no agreement between the parties.

The cases of Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569; La Fleaur v. Kinard, Tex.Civ.App., 161 S.W.2d 144, writ refused, W.O.M.; MacDonald v. Carlisle, 146 Tex. 206, 206 S.W.2d 224; Wedegartner v. Reichert, Tex.Civ.App., 218 S.W.2d 304, writ refused, N.R.E., are in accord with the above-quoted rule.

The primary issue made by the pleadings of both parties in this appeal was whether appellee was indebted to appellant for water rent for the 1948 irrigation season and whether appellant had a lien on appellee's crop or the proceeds thereof for that year.

■ . Under the above authorities, the only evidence the court was required to consider in this case was the sufficiency of the evidence on the question of the existence of a contract between the parties. The only

proof offered by appellant in support of the alleged oral contract to furnish this water was through the testimony of its president, Mr. Savage, who testified that appellee did not agree to pay any part of the Novak water rental and that no mention was made by him of the amount of the water rental appellee was to be charged. Under this state of the record, the trial court, was, we think, correct in holding that the testimony was insufficient to require the submission to the jury of an issue on the question of appellant's contract with appellee.

The record reflects that upon the trial of the case, appellant presented to the court 14 special issues and requested that they be submitted to the jury. The court denied appellant's request and submitted 5 special issues to the jury.

In support of its right to recovery under a quantum meruit theory, appellant alleged that appellee had requested it to furnish him water for irrigating his 1948 rice crop and that it did so by delivering water into Flores Bayou for his use; that appellee had knowledge of that fact and that he pumped water from Flores Bayou and used it to irrigate his crop, the water having been furnished by the Irrigation Company to plaintiff, and that appellee, having received and used the same for irrigating his rice crop, he became obligated and indebted to pay appellant the reasonable worth thereof.

In support of its right to recover under the conversion theory, appellant alleged that it had a verbal agreement with the Bayou Farmers, including appellee, to supply them with water for the 1948 season for irrigating their crops. They alleged that appellee owed the duty to pay the Irrigation Company the lawful rate therefor, which it says was $12 per acre for each and every acre of land of rice irrigated; that appellee did in fact withdraw from Flores Bayou water delivered into said bayou by it for the use of the Bayou Farmers, including himself, and used the same to irrigate his rice crop for 1948, and that he became liable and bound to pay to it the reasonable worth thereof, namely $12 per acre for 854.83 acres of land, amounting to the sum of $10,257.96.

Appellant asserts that its theory of recovery was not properly presented to the jury and urged as error the action of the trial court in refusing to submit to the jury the 14 special issues requested by it, which included issues as to whether appellant and the Bayou Farmers agreed that if appellant would furnish water, they would pay water rent to appellant at the rate of $12 per acre and that they would pay one-half of the water rent chargeable to A. E. Novak in 1948; whether appellee had agreed with appellant upon the same terms as the other Bayou Farmers except that he would not be liable for any part of Novak's rent; whether appellant diverted water into Flores Bayou for the use of appellee in 1948 and whether appellee pumped such water out of Flores Bayou; whether the water delivered into Flores Bayou by appellant, together with other water was sufficient to make a crop on appellee's land; whether appellee irrigated his crop with water pumped out of Flores Bayou and other water; whether appellee requested the appellant to turn water into Flores Bayou for appellee; whether appellant, pursuant to the request of appellee, diverted water into Flores Bayou for appellee; whether appellant diverted water into the Big Ditch and Flores Bayou and such water was withdrawn by appellee from Flores Bayou.

The only evidence furnished by appellant in the trial of the case in regard to furnishing water to appellee was to the effect that run-off, re-used, seepage or drainage water from various farms had collected in the Big Ditch and Flores Bayou. It is undisputed that the Big Ditch was a man-made drainage ditch and that Flores Bayou was a natural water course.

The finding by the jury that appellant did not furnish appellee any water, we think, disposes of any contention made by appellant that appellee is indebted to it for water furnished on either the quantum meruit theory or on the conversion theory, and renders the failure of the court to submit said issues harmless, if it was error to refuse to submit said issues.

██ Further, it is a well established rule in Texas that waters of public streams belong to the sovereign and are held by the sovereign in trust for the public. Article 7467, V.A.C.S., provides that an appropriator of water from a public stream does not acquire the ownership or corpus of the water but merely acquires the right to the use thereof for the purposes set forth in the permit under which he appropriates.

In the case of Beaumont Irrigating Co. v. Ellison, Tex.Civ.App., 260 S.W. 245, 246, in which the facts are similar to those in the instant case in that an irrigation company brought suit against appellee, a rice farmer, to recover water rental on 88.7 acres of land cultivated by appellee during the year 1922, the appellant sought to show that the appellee irrigated its rice crop for the year 1922 with the water from its canal. Appellee denied this contention and offered proof that their crop was irrigated by natural drainage. The court, in its opinion, said, "The evidence was sharply conflicting as to the source of water used by appellees to irrigate their rice crop, but on a careful review of all of the evidence, it is clear to us that appellees offered sufficient evidence, if believed by the court, * * * to sustain a judgment in their favor." The court found that there was no liability for water rental.

The facts and questions involved in the Ellison case were similar to the questions presented in the instant case in that the Irrigation Company claimed that appellee owed rental for water used out of its canal. Appellee contended that it had irrigated its crop with drainage water. The appellate court held that appellee had used drainage water and that he owed no liability to the Irrigation Company for water rent.

Decisions from other jurisdictions dealing with the appropriation of waste or seepage water, with few exceptions, follow substantially the same line of reasoning as that adopted by our courts.

In 89 A.L.R. 210, 213, it was held that "an appropriator of water does not own the corpus of the water but has only the right to its use." Citing authorities.

In Galiger v. McNulty, 80 Mont. 339, 260 P. 401, the Supreme Court of Montana held that waste or seepage water which was orig-

inally brought from an alien watershed for mining purposes and then permitted to flow down a gulch as waste water, could not be sold to one desiring such water for irrigation purposes, and, as it could not drain back into the stream from which it was taken, it became waste, fugitive, and vagrant water and subject to be treated as such; that the appropriators had no longer any jurisdiction over it or ownership in it. They did not own the corpus of the water, hence they had nothing to sell, and their attempted sale of the water or the right to use the same was wholly void.

It is stated further in the annotation under 89 A.L.R. 210, at page 227: "Where nothing is done to recapture or reclaim escaped water before it reaches a stream, but it is permitted to flow or percolate by its natural course into the stream and intermingle with the waters of the stream, it is generally held that in such a case the escaped water is not subject to recapture."

In the case of Eddy v. Simpson, 3 Cal. 249, 58 Am.Dec. 408, the Supreme Court of California held that where water, after it had been taken from neighboring streams and used for mining purposes, found its way into another stream the waters of which had been appropriated by means of a dam and a ditch used for mining purposes, and the person permitting the water to go to waste subsequently built a dam above the dam of the prior appropriator and proceeded to take water from the stream, that the waste water could not be reclaimed in that way, that the right to the water, being merely usufructuary, depends upon possession, and that, after the water has once left the possession of the appropriator, it is lost beyond recall.

There is evidence in this record that the main source of supply of the water which appellant claims to have furnished appellee was the drainage, run-off or seepage waste water from the fields of some of its consumers which had collected in various drainage ditches which emptied into the Big Ditch and thence into Flores Bayou. No evidence was offered by appellant to show that it had acquired or exercised any lawful right to the use or control of the drainage ditches and the Big Ditch outside its permit area, or that the water flowing into the Big Ditch outside its permit area, was in any manner subject to its control or that such water was still in appellant's possession.

Under the above authorities we think that appellant was not entitled to the issues requested.

Under its counter points appellee contends that appellant failed in meeting the burden of proof cast upon it to show that appellee used the water alleged to have been placed in Flores Bayou by appellant, or the quantity of such water and the value thereof.

The burden of proof was unquestionably upon appellant to show by its evidence that (1) appellant supplied the water in question, (2) that appellee used such water, and (3) the value of such water.

In the case of Kirkpatrick v. Surkey, Tex. Civ.App., 32 S.W.2d 904, 906, error dismissed, appellees sued appellants on contract and in the alternative on quantum meruit for services performed in connection therewith. In its opinion on motion for rehearing, the court held, "It was properly held by the trial court, and by this court in the original opinion, that the written contract was a nullity, and that appellee could not recover thereon. * * * There was no evidence that appellee entered into any parol agreement with appellants concerning the transaction, or that appellee performed any services at the instance or for the special benefit of appellants, or that appellants agreed to pay appellee for his activities in getting San Pedro Avenue widened. Because of such failure in proving his case, he could not recover upon the quantum meruit."

In the case of Perren v. Baker Hotel of Dallas, Tex.Civ.App., 228 S.W. 2d 311, 314, it was held that, "* * * if the probative force of slight testimony with reference thereto was so weak that it only raised a mere surmise or suspicion of the existence of some or all of the essential facts sought to be established, then it was the duty of the trial court to withdraw the

case from the jury or to instruct the verdict. * * * Where circumstances are equally consistent with the existence and nonexistence of an ultimate fact sought to be established, such circumstances are wanting in probative force as any evidence tending to establish the existence of the ultimate fact."

We have carefully considered all points of alleged error presented by appellant in its brief and, finding no reversible error therein, the judgment of the trial court must be in all things affirmed.