ACCEPTED
14-15-00031-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
11/30/2015 4:59:15 PM
CHRISTOPHER PRINE
CLERK

# THE TERRILL FIRM

### A PROFESSIONAL CORPORATION

810 West 10th Street
Austin, Texas 78701
Tel (512) 474-9100
Fax (512) 474-9888

November 30, 2015

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

11/30/2015 4:59:15 PM

CHRISTOPHER A. PRINE
Clerk

Christopher A. Prine
Clerk
Fourteenth Court of Appeals
301 Fannin, Room 245
Houston, Texas 77002

*via e-filing*

> Re:    Case No. 14-15-00031-CV; *R.E. Janes Gravel Company v. Zachary Covar et al*; in the 14th Court of Appeals, Houston, Texas.

Dear Mr. Prine:

R.E. Janes Gravel Company ("Janes Gravel"), Appellant in the above referenced matter, files this post-submission letter brief in order to respond to a matter addressed in the City of Lubbock's (the "City") oral argument on November 17, 2015, that had not been raised in the briefing before this Court.  Specifically, the City alleged that return flows are not, as a general matter, included within Water Availability Models ("WAMs") applicable to watercourses in Texas and that, therefore, the Texas Water Code would not need to account for senior water rights holders' claims to historical return flows.  By this letter brief, Janes Gravel refers this Court to the documents in the record contradicting these allegations.  The record documents also address questions presented to the undersigned counsel by the panel during oral argument—regarding whether the City could simply cease its discharges temporarily in order to obtain a bed and banks permit.

Regarding WAMs, according to the Texas Commission on Environmental Quality's ("TCEQ") own statements, municipal return flows are "routinely considered in water availability models used to determine the availability of unappropriated water."  CR 410.  As a result, if this Court were to conclude, as Appellees request, that any historical discharger of return flows can freely repossess its return flows under Texas Water Code section 11.042(c), then downstream senior rights holders throughout the State of Texas will be severely harmed, losing their ability to access the water on which they have relied for decades.[1]

The TCEQ's statements regarding WAMs are cited in a 2004 bar journal article explaining how Janes Gravel's position in this case is correct not only under the proper construction of both the Texas Water Code and the relevant case law authority, but also because of practical implications and sound public policy impacting the entire state.  CR 406-12.

---

[1]  In this case, while the City's discharges specifically from Outfall No. 001 may not have yet been included in a WAM on the North Fork, those same return flows at the City's earlier wastewater treatment locations were so included.

In that article, citation is also made to the TCEQ's own Memorandum from 1997 supporting the passage of Senate Bill 1—the legislation under which Texas Water Code sections 11.042(c) and 11.046(c) were enacted. CR 407. This TCEQ Memorandum is in the record. CR 414-19. The TCEQ therein acknowledged—just as Janes Gravel advocates before this Court—that any rights granted under a bed and banks permit *must be subordinate* to the existing senior rights downstream, in accordance with *South Texas Water Co. v. Bieri*, 247 S.W.2d 268, 272 (Tex. Civ. App.—Galveston 1952, writ ref'd n.r.e.):

> If a water right holder wants to discharge and then divert his return flows for further use, he will need to apply for a new appropriation of water. A new appropriation is junior to all other existing water rights . . . .

CR 415-16. The TCEQ recognized that—as would be expected given the inclusion of return flows in WAMs as a general matter—such rule strikes the appropriate balance between the dischargers' right to directly reuse water (prior to discharge) and the status quo on the watercourse of return flows' continued availability (subsequent to discharge). CR 416-17; *see* TEX. WATER CODE § 11.046(c) (codifying this very rule). According to the TCEQ's own analysis:

> [A] person may not . . . obtain a bed and banks permit after the fact to divert surface or ground water historically discharged by that person . . . . Additionally, *a bed and banks permit would not be granted to a person who temporarily ceases the discharge for the purpose of attempting to qualify for a bed and banks permit*.

CR 418 (emphasis added).

The italicized statement by the TCEQ speaks directly to Justice Christopher's comments at oral argument inquiring whether the City of Lubbock could simply halt its discharges and obtain a bed and banks permit for those halted amounts. The City could not do so. Historical discharges of surface water, having been returned to the ordinary flow of a state watercourse, are now the property of the State of Texas. *See City of San Marcos v. Tex. Comm'n on Envtl. Quality*, 128 S.W.3d 264, 278 (Tex. App.—Austin 2004, pet. denied) (citing TEX. WATER CODE § 11.021(a)).

This is why section 11.042(c), enacted in 1997, expressly requires that any permit to divert the applicant's own return flows be issued "prior" to the time the applicant begins to "convey" any of those flows. *See* TEX. WATER CODE § 11.042(c). It is undisputed in this case that the City started conveying its flows without first obtaining a bed and banks permit.

This principle is confirmed by the fact that section 11.042(b) requires the consideration of existing water rights granted based on the return flows' availability, but section 11.042(c) does not. *See id.* § 11.042(b)-(c). The *only* reasonable statutory construction is that section 11.042(c)—applicable to surface water discharges—does not authorize a bed and banks permit for flows that have been historically discharged. Because the bed and banks permit could only

apply to not-yet-commenced discharges, it would be impossible for a water right to have been granted based on the return flows' presence in the watercourse.

A final reference to the record should guide this Court. At oral argument, the undersigned counsel explained that the City made the decision to commence discharges *knowing* that, under statute and case law, those discharges would be abandoned. As just one example, in the 1990 report identifying Outfall No. 001 as a potential location to discharge treated effluent, the City was informed: "The effluent that is discharged into the stream . . . would probably be lost to the City of Lubbock for future reuse options." 30 AR Janes-26 at p. 3-6.

All of these statements—in the 2004 bar journal article, in the 1997 TCEQ Memorandum, and in the 1990 City of Lubbock report—reflect the critical statewide statutory policy that "first in time is the first in right." *See* TEX. WATER CODE § 11.027. As the Texas Supreme Court has declared definitively: "Texas statutes protect senior water rights from actual impairment." *Lower Colo. River Auth. v. Tex. Dep't of Water Res.*, 689 S.W.2d 873, 882 (Tex. 1984). According to the Supreme Court, therefore, an agency decision simply cannot be affirmed by a reviewing court if it divests or impairs Texans' senior rights. *Id.* Because the City commenced discharges of surface water, it could not obtain a bed and banks permit after the fact, but must apply for a new appropriation of water junior to Janes Gravel's rights.

Thank you for your courtesies. If you have any questions, please feel free to contact me at (512) 474-9100.

Sincerely,

Ryan D. V. Greene
**THE TERRILL FIRM, P.C.**

cc:     Cynthia Woelk          *via e-filing*
        Tony Grigsby          *via e-filing*
        Jason Hill            *via e-filing*