## H. D. MacDonald et al v. J. R. Carlisle et al.

No. A-1270. Decided October 15, 1947.
Rehearing overruled November 19, 1947.
(206 S. W., 2d Series, 224.)

*Florence & Florence*, of Gilmer, and *D. S. Meredith, Jr.*, of Longview, for MacDonald, *Pollard, Lawrence, Blackburn, Reeves, Crawford & Jarrel*, of Tyler, for Manziel, *Leslie Neil*, of Tyler, for J. M. Stephens, Trustee, and L. Neil, all petitioners.

*Jones & Jones,* of Mineola, for respondents.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

On the 14th day of September, 1940, two instruments were executed and manually delivered by J. R. Carlisle and wife, Roxie Carlisle, to H. D. MacDonald. The first was an agreement whereby for a consideration of $50.00, MacDonald was given a 30-day option by the Carlisles to purchase from them a 10/144th undivided royalty interest in 144 acres of land. The second (executed and delivered at the same time) was a warranty deed of the same interest to the same vendee. The sale price of the · interest as fixed by the option was $1,000.00. The option contract provided for one execution and delivery to MacDonald upon the exercise by him of his option and acceptance of title, a good and sufficient warranty deed to the royalty interest. Prior to the expiration of the 30-day period MacDonald exercised his option, accepted the title, and mailed to the Carlisles by registered mail his check for $1,000.00 drawn on the Longview National Bank covering the sale price. The deed was a full warranty deed. Its terms were absolute and unconditional, and no lien of any character was retained..

The Carlisles on October 29, 1940, filed a formal trespass to try title suit against MacDonald to recover the land described in the instruments. Other defendants who had accepted conveyances of fractional interests in virtue of the above described option and conveyance transactions, were sued in the same action. At the close of the evidence the trial court granted defendant's motion for an instructed verdict *for the land* and entered a judgment denying plaintiffs any recovery *except for $1,000.00 plus the interest* theretofore deposited by MacDonald (prior to the filing of the suit by the Carlisles) in the registry of the court. The court's judgment ordered and decreed that the clerk pay over to "Mrs. Roxie Carlisle and J. R. Carlisle the said sum of $1,000.00 together with the sum of $337.00

interest thereon as deposited in the registry of this court, upon their demand and giving receipt therefor."

The Court of Civil Appeals reversed and remanded the cause except that part of the judgment in favor of certain of the defendants (other than MacDonald) not necessary to be named, which was affirmed. 200 S. W. (2d) 436.

Writ of error was granted on MacDonald's application; also on the application of Bobby Manziel and J. M. Stephen's, Trustee, et al, respectively.

In the point on which MacDonald's application was granted it was alleged that the Carlisles, in the light of undisputed facts, were not entitled to a cancellation of the deed executed and delivered by them to MacDonald; and that they had waived such right if it ever existed.

The writ allowed on Bobby Manziel's application was granted on two points. The first was to the effect that the Court of Civil Appeals erred in holding that the Carlisles were not relegated to an action for debt by reason of their acts and conduct after they received the check from MacDonald. The second point was merely a restatement of the first, elaborated to the extent of a statement that the Carlisles had waived any right of rescission of their deed to MacDonald, since the undisputed evidence showed that after the failure of the bank to pay MacDonald's check respondents elected to stand on the debt and collect the check, retaining same, and never demanding of MacDonald the surrender of the warranty deed or seeking a reconveyance of the interest conveyed by them.

The writ was granted on the application of J. M. Stephens, trustee, et al, on the point that the Court of Civil Appeals erred in not affirming the judgment of the trial court, the point being elaborated to the general effect stated in the Manziel application; and further (and more specifically) to the effect that certain pleadings and testimony of the Carlisles constituted judicial admissions of the essential elements of the alleged waiver and that undisputed evidence showed that the Carlisles ratified the transactions in question and were estopped to question same.

■ It is our view upon full consideration of the case that the judgment of the trial court was correct and that the Court of Civil Appeals erred in not affirming it. Middlekauff v. State

Banking Board, 111 Texas 561, 242 S. W. 442; So. Sur. Co. v. Inabnit (Civ. App.), 1. S. W. (2d) 412; J. R. Watkins Co. v. King (Civ. App.), 83 S. W. (2d) 405; Stanolind Oil & Gas Co. v. State, 136 Texas 5, 145 S. W. (2d) 569; Oberholtzer v. Myles (Dism. Judgm. Cor.), 147 S. W. (2d) 569; Kimmell v. Tipton, 142 S. W. (2d) 421; Happ v. Happ (R. W. M.), 160 S. W. (2d) 227.

■ The evidence (briefly summarized as to its clear import) is that after MacDonald's $1,000.00 check reached (belatedly) the bank on which it was drawn there were not sufficient funds in his account to pay it; that about a week after the Carlisles received the check they deposited it in their local bank at Atlanta, Texas, that it reached the Longview, Texas, bank (on which drawn) about 10 days later; that the Carlisles, after the check was returned from the Longview bank, sought to see MacDonald to get the money from his personally but failed to get in touch with him; that MacDonald, shortly thereafter, after he learned the check was not paid, sought out the Carlisles and tendered them the money for the full amount. The Carlisles retained possession of the check (through themselves and their attorney to whom they gave possession of it) for more than five years,—in fact until it was offered in evidence on the trial. Their course with respect to the check after receiving it, together with their testimony, discloses that they accepted it unequivocally. Nor is there any evidence that MacDonald sought to avoid payment after he learned there were not sufficient funds in the bank to cover the amount for which it was drawn; nor is there any evidence that there were not ample funds in the account to cover the check (when drawn) had it been sent in for collection by the Carlisles in due course.

■ On May 31, 1944, nearly four years after MacDonald sent to the Carlisles the check in question, the Carlisles filed their third amended original petition. They alleged that they delivered "their deed of conveyance to the said MacDonald and *accepted* said draft, believing and expecting that same would be paid." The further pleading of the Carlisles in this connection was to the effect that they accepted the check because MacDonald fraudulently induced them to do so; but the evidence, as presently appears, precludes such an issue. That the Carlisles received the check as actual payment cannot well be doubted. The testimony of Mr. and Mrs. Carlisle, to say nothing of their pleadings, brings their conduct within the rule of being bound by their admissions and testimony, and not as merely raising an issue of fact on the question of whether or not they accepted

the check as payment. Texas & Pac. Ry. Co. v. Wood, 145 Texas 534, 199 S. W. (2d) 652 and cases above cited.

The envelope in which MacDonald mailed the check to the Carlisles was postmarked "Tyler, Texas, October 14, 1940." The registered postmark on the back of the envelope was "Bivins, Texas, October 14, 1940." Mr. Carlisle said he signed for the letter, took it to his wife and that she opened it. He admitted that he and his wife endorsed the check and deposited it for collection in the First National Bank at Atlanta, Texas. He did not remember the wording of the letter of transmittal but knew, he said, that the check was received; and that the money was not accepted when proffered to Mrs. Carlisle because it had been turned over to his lawyer for collection. At the time the check was offered in evidence Mr. Carlisle was asked whether the signatures endorsed on the back were those of himself and Roxie Carlisle. "They are, yes, sir," he said, "no argument about that." He testified the check was received on "either the 15th or 16th, * * * don't know which"; and that he knew MacDonald was accepting the deed. Mrs. Carlisle testified that the option and deed were executed at the same time and place, and remembered the occasion when Mr. Carlisle received the check. She said: "I kept it for a few days, then took it to my bank (at Atlanta, Texas) for deposit." There is no discrepancy of any consequence in the statements of Mr. and Mrs. Carlisle. One question asked her by her attorney (she took the stand immediately after Mr. Carlisle testified) was: "Do you remember a *transaction that you had with Mr. MacDonald* on or about September 14, 1940"? (Italics ours.) She said she did, and remembered her husband's receiving the envelope with the enclosed check, and told of her keeping it a few days and then taking the check and depositing it in her bank at Atlanta. There is no intimation in any of the testimony that Mr. and Mrs. Carlisle were not in full accord concerning all matters connected with the sale. She said she recalled when Mr. MacDonald came to her house "around" October, 1940, *before the lawsuit was filed,* "thirty days from the time I had gotten this check and he offered me a $1,000.00 at this * * * date * * * in my own home * * *."

MacDonald's check, or draft, was actual payment for the royalty interest described in the deed since the circumstances disclose that both MacDonald and the Carlisles so intended. Middlekauff v. State Banking Board, supra.

That part of the judgment of the Court of Civil Appeals re-

versing a portion of the trial court's judgment is reversed and set aside, and judgment of the Court of Civil Appeals is so reformed as to affirm in toto the judgment of the trial court. It is so ordered.

Opinion delivered October 15, 1947.

Rehearing overruled November 19, 1947.