CULVER, Justice
(dissenting).
The court lays considerable stress on the fact that circumstances indicate Kinsel believed that Wiley’s check would be honored upon presentment at the bank, saying that one who deliberately agreed to accept an ordinary check for an amount as large as $17,451.02 must have had great confidence in the maker of the check and the jury would be authorized to so conclude. In my opinion that fact is established beyond any doubt. Of course Kinsel believed that the check was good, otherwise he would not have accepted it in the first place. I proceed from that premise.
As stated by the court, it is the well-recognized rule in Texas that, when a sale is made for cash and payment is by check, title to the chattels sold does not pass until the check is honored by the drawee bank, the payment by check being presumed to be conditional payment, and if accompanied by delivery of the chattels, such delivery is also presumed to be conditional. The acceptance of a check by the seller does not imply an extension of credit to the buyer.
*25 The rule is thus phrased in Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527:
“ * * * When the contract of sale is that the goods sold shall be paid for with cash, or notes executed by the vendee or a third person,, the sale is on condition that the payment be made, and until this is done the title to the goods remains in the vendor notwithstanding they may have come into the possession of the vendee, unless it appears that they were delivered to the purchaser with intent to waive the condition of payment. * * * ”
This was a cash transaction. Kinsel did not expressly or by implication extend ■credit to the purchaser. The question is then not whether Kinsel had confidence in Wiley but whether he delivered the cattle with the intent to waive the condition of payment or intended to accept the check in full, final and complete payment regardless of whether it should be later honored or ■dishonored.
Only by Kinsel’s deposition and affidavit and by circumstances does Valley Stockyards seek to overcome the presumption that the check was accepted by Kinsel conditionally. A party to a transaction of this nature may not testify subjectively as to what his intention was at the time and such testimony will not be considered unless it be by way of an admission. Although pressed repeatedly by leading questions calling for conclusions, considered fairly, Kinsel’s answers are not contradictory nor is there to be found in his deposition or affidavit any •admission of an intent to convey title unconditionally. In my opinion it denotes no more than that Kinsel accepted the check and delivered the cattle.
I think the conduct of Kinsel in endorsing the check over to the Credit Association was not such a circumstance as would indicate an intention on his part to have passed title to the cattle unconditionally or to Rave accepted the check in absolute and final payment any more than his depositing the check in his own bank for collection would so indicate. The fact that Kinsel, after he learned that payment on the check had been refused, tried to ascertain the disposition of the cattle, and to find Wiley to me indicates only the conduct of an ordinarily prudent seller in an effort to protect his own interest. What else was there for him to do? The cattle had been sold and dispersed. Any effort to recover possession of them would have been futile.
The authorities cited by the court in support of its holding have little, if any, application to the facts here and are clearly distinguishable. To begin with the court quotes at some length from Continental Bank & Trust Co. v. Hartman, Tex.Civ.App., 129 S.W. 179, no writ history. In that case the payee brought a suit against the maker of the checks given in the cotton transaction and against the bank on which the checks were drawn, alleging that the bank had authorized the maker to give checks on it for all cotton purchased and guaranteed that the bank would honor the same. In the alternative the plaintiff alleged that they sold the cotton for cash and that the bank had converted the cotton sold to the maker of the checks. Obviously in that case the plaintiffs themselves not only brought suit on the checks but by pleading and proof raises a fact question as to the bank’s guarantee of payment.
In Lang v. Rickmers, supra, title to the chattels was held not to have passed because the purchaser had failed to execute and deliver the notes as called for in the contract. State Life Ins. Co. of Indiana v. Little, Tex.Civ.App., 264 S.W. 319 did not involve a sale but rather a check given in payment of a life insurance premium. On receipt of the check the company issued its receipt and although the company had notice that the check was protested for nonpayment and returned, the company had not communicated further with the deceased prior to his death. The court further pointed out that the company by retaining possession of the check acquired a right against the insured, *26 which it did not have theretofore since it could treat the check as a personal obligation and collect by suit.
McAdow Motor Co. v. Luckett, Tex.Civ.App., 131 S.W.2d 267, no writ history, is illustrative of a case where the evidence raises a fact question as to whether Mc-Adow subsequently to the transaction waived the condition of payment. In that case the dealer sold an automobile to another dealer whose check given in payment was dishonored. The seller had executed and delivered a bill of sale, together with the car to the purchaser. After payment of the check was refused the dealer redeposited the check for collection and made several trips thereafter in an attempt to collect the amount of the check from the purchaser.
As to the holding in Littlejohn v. Johnson, Tex.Civ.App., 332 S.W.2d 439, no writ history, the court recites that the sole issue in that case was whether or not the tender of payment to Littlejohn was sufficient. The check was given by Texaco, Inc. in payment of a money judgment. All that the payee had to do to receive his money was to endorse the check and present it for payment. He refused to so do because the name of his attorney was included as a payee, although the check had been endorsed by the attorney and given to Littlejohn.
In MacDonald v. Carlisle, 146 Tex. 206, 206 S.W.2d 224, the vendor executed and delivered to the vendee a warranty deed to a certain royalty interest for the sum of $1,000.00. An implied vendor’s lien was retained. Payment of the check given in that amount was refused and the vendee on ascertaining that fact tendered to the vendors the money for the full amount. The Carlisles, although refusing the tender,, retained possession of the check for more than five years until it was later offered in evidence on the trial. The point on which the application for writ of error was granted alleged that the Carlisles in the light of undisputed facts were not entitled to cancellation of the deed executed and delivered by them and that they had waived such right if it ever existed. These cases seem rather to negative the idea that under the facts in the case here, a jury would be warranted in finding that Kinsel intended to accept the check in full and complete payment.
Ewing v. Sylvester, Tex.Civ.App., 94 S.W. 405, no writ history, is a case somewhat similar to McAdow. Restating the rule announced in Lang v. Rickmers, the court said: “A waiver must be made voluntarily, and it is a question of fact that must be made to clearly and plainly appear.” In that case the terms of the sale were part cash and installment notes. The check for the cash payment was dishonored. The seller allowed the purchaser to retain the machine notwithstanding the fact that the check was not paid and notwithstanding the purchaser’s repeated and unfilled promises during many weeks to pay the same. Even after one of the notes became due the seller was still insisting upon the cash payment and attempting to make collection. That evidence was held sufficient to justify a finding that the seller had waived a condition in the contract requiring the payment of a portion of the purchase price in cash. Globe Milling Co. v. Minneapolis Elevator Co., 44 Minn. 153, 46 N.W. 306, 307, is authority for the proposition that: “To constitute a waiver there must be not only an act of delivery, but an intent not to insist on immediate payment as a condition of the title not passing.”
The court is hard pressed to point out any certain fact or circumstance that would support the theory of unconditional delivery. The court says that, while any one taken separately might not be sufficient in itself, but considered altogether, apparently on the theory that zero plus zero equals one, the jury might draw the inference that Kinsel believed Wiley’s check would be paid on presentation; that he accepted it in payment of the cattle and used the check to apply on his debt to the Credit Association. The inference to be drawn, if any, to justify submission of this case to the jury is that *27 Kinsel, at the time he accepted the check, ■waived payment upon presentation. Such an inference, in my opinion, is not justified. To submit this case to a jury is to invite mere speculation.
I can conceive of a situation where one in possession of perishable commodities, or for some other like reason, might he so anxious to sell, that he would intend title to pass upon delivery and take a chance on the check being paid or collected subsequently, but where the goods are sold at the prevailing price and the seller is confident that the check will be paid on presentation, the contrary would seem to be almost conclusive.
Stockyards Company alleged in its answer that it was the custom and usage in La-Salle County “to buy, sell, transfer, convey and deliver possession and ownership of cattle without asking for or giving any muniment of title or bill of sale,” and they further say that the existence of such custom and usage is supported by Kinsel’s testimony. Actually all that is alleged simply means that people customarily buy and sell cattle without giving or requiring a bill of sale. It does by no means assert that it is the custom in LaSalle County, for the seller on acceptance of a check whether the check be good or not to pass immediately to the purchaser the unconditional title. So far as the testimony of Kinsel is concerned he says no more nor less than that he does not very often give a bill of sale and that few cattle men do.
The court speaks of the Winter Garden Production Association’s custom in its cattle transactions of using a combination check and bill of sale document with which Kinsel was thoroughly familiar. Of course if the sale had been expressly conditioned on title not passing until the attached check was paid the case would not be here for decision. It was Wiley’s check that Kinsel accepted. I think it will not do to say that because Kinsel did not insist on Wiley’s using the combination check suggested by the court that this failure would be taken as evidence that it was Kinsel’s intention to waive payment of the check any more so than Kinsel’s failure to require the cash or a cashier’s check from Wiley before delivery of the cattle.
I might point out that Art. 6903, Vernon’s Ann.Civ.Stats., requiring a written transfer in cattle sales is applicable in LaSalle County, though not in Hidalgo County (Art. 7005). The article plainly provides in part that possession of any animal absent a written transfer shall be “prima facie illegal.”
As said in Wells v. Littlefield, 59 Tex. 556,
“ * * * The penalty for not taking such a written instrument upon receiving possession of cattle is that the possession shall be deemed prima facie illegal. It is not made conclusively unlawful, but is open to explanation; and nothing prevents a title to such property from passing without a hill of sale if it can be proved that it was bona fide made, upon sufficient consideration, and that no evasion of the law was intended.”
Stockyards Company has failed to assert or prove any such custom or usage as would serve to raise any fact question in this case.
The court recites that Kinsel was over-trusting and careless as to his own welfare. While this is also beside the point he was no more so, I think, than Valley Stockyards who purchased and paid Wiley for the cattle evidently with no inquiry as to title and not only that but resold some of the same cattle to Wiley and accepted in payment therefor his worthless check.
I would affirm the judgments of the trial court and Court of Civil Appeals.
SMITH and WALKER, JJ., join in this opinion.